| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------x<br>In re:<br><br>ONEIDA LTD., *et al.*,<br><br>                            Debtors.<br><br>------------------------------------------------------x | NOT FOR PUBLICATION<br><br><br>CHAPTER 11<br><br>Case No. 06-10489 (ALG)<br>(Jointly Administered) |

**MEMORANDUM OF OPINION AND ORDER ON MOTION FOR
APPOINTMENT OF EQUITY COMMITTEE**

APPEARANCES

BROWN RUDNICK BERLACK ISRAELS LLP
Seven Times Square
New York, New York 10036
      By: Edward S. Weisfelner, Esq.
          Robert J. Stark, Esq.


      -and-

One Financial Center
Boston, Massachusetts 02111
      By: Lisa M. Kelsey, Esq.


Attorneys for the *Ad Hoc* Committee of Equity Holders

SHEARMAN & STERLING LLP
Attorneys for Debtors
599 Lexington Avenue
New York, New York 10022
      By: Douglas P. Bartner, Esq.
         Michael H. Torkin, Esq.
         Bryan R. Kaplan, Esq.

OTTERBOURG, STEINDLER, HOUSTON & ROSEN, P.C.
Attorneys for the Official Committee of Unsecured Creditors
230 Park Avenue
New York, New York 10169
      By: Scott Hazan, Esq.
         Lorenzo Marinuzzi, Esq.
         Melissa A. Hager, Esq.

MORGAN, LEWIS & BOCKIUS LLP
Attorneys for JP Morgan Chase Bank, N.A.
101 Park Avenue
New York, New York 10178
    By: Richard S. Toder, Esq.
       Leonard Klingbaum, Esq.

OFFICE OF THE UNITED STATES TRUSTEE
33 Whitehall Street, 21st Floor
New York, New York 10004
    By: Richard C. Morrissey, Esq.

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

An *ad hoc* committee of equity security holders that has appeared and participated in these administratively consolidated cases since inception applied to the United States Trustee for the appointment of a committee of equity security holders pursuant to 11 U.S.C. § 1102(a)(1), which provides that the U.S. Trustee "may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate." After receiving extensive information from counsel for the *ad hoc* group from the Debtors and from JPMorgan/Chase Bank, N.A., as administrative agent for the Debtors' lenders (the "Lenders"), the U.S. Trustee determined by letter dated April 10, 2006 to deny the request for appointment of a committee. The U.S. Trustee found that courts in this District have held that the appointment of an equity committee should be "the rare exception, and should not be appointed unless equity holders establish that (i) there is a substantial likelihood that they will receive a meaningful distribution in the case under a strict application of the absolute priority rule, and (ii) that they are unable to represent their interest in the bankruptcy case without an official committee." Mot. of the *Ad Hoc* Comm. of Equity Holders for an Order Compelling the Acting U.S. Trustee to Appoint an Official Comm. Of Equity Sec. Holders, Ex. H at 1, citing *Williams*

2

*Communications Group, Inc. v. CG Austria, Inc.*, 281 B.R. 216, 223 (Bankr. S.D.N.Y. 2002).

By motion dated April 14, 2006, the *ad hoc* committee moved this Court for the appointment of a committee pursuant to 11 U.S.C. § 1102(a)(2), which provides, "On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders." The statute requires the Court to find that the appointment of an equity committee is "necessary," a high standard that is far more onerous than if the statute merely provided that a committee be "useful." See *In re Kasper A.S.L., Ltd.*, Oral Opinion, Case No. 02-10497 (ALG) (Bankr. S.D.N.Y. July 15, 2003) (Tr. Hr'g on July 15, 2003 at 68). Moreover, although review of the U.S. Trustee's determination is *de novo*, due consideration should be given to the views of the U.S. Trustee. 7 Collier, *Bankruptcy* ¶ 1102.07[1], citing *In re Texaco, Inc.*, 79 B.R. 560 (Bankr. S.D.N.Y. 1987).

The record on this motion includes expert reports as to the solvency or insolvency of the Debtors and extensive submissions by the parties, including a newly-formed Creditors Committee that joined the Debtors in opposition to the motion. The Court heard a full day of testimony and argument, including testimony on valuation issues from both sides' experts, brief testimony from two members of the Debtors' Board and management, and deposition testimony from a former member of the *ad hoc* equity committee. In connection with the instant motion, the Court also considered the entire record of the cases, including the circumstances of the filing of the cases and the Debtors' restructuring efforts. From a business perspective, the Debtors have restructured their

3

business operations to eliminate the manufacturing of their products, and their business is now based entirely on a "total sourcing" of products that they distribute under their well-known brand names. From a financial perspective, the Debtors restructured their debt in 2004 by converting a portion of their secured debt into 62% of the common stock and structuring the remainder of the debt in the form of a revolving loan and two tranches of secured debt, collateralized by substantially all of their assets. On the date they filed these cases, the Debtors filed a plan of reorganization that proposes the following further financial restructuring: (i) the senior tranche of secured debt will be paid in full from exit financing that is already in place (the revolver has already been paid out of a DIP financing authorized by the Court); (ii) the junior tranche of secured debt in the principal amount of $80 million as of the filing date will be converted to equity;[1] (iii) the Pension Benefit Guaranty Corporation ("PBGC") will receive a note for its claim; (iv) general unsecured claims will be paid in full; and (v) the old equity will be eliminated.

As noted above, one of the principal issues on any motion for the appointment of an equity committee is whether the debtor is solvent or it appears likely that there will be a return (or a substantial return) for equity. On this issue, the testimony before the Court on the valuation of the Debtors was extensive and conflicting. As of the hearing date, the record was also incomplete. Among other things, the size and nature of the PBGC claim is unknown, although the Debtors have reached a settlement with the PBGC that will be scheduled to come before the Court for approval. Yet, even if the Court could weigh the evidence presented at the hearing, any such determination would run the risk of prejudicing one party or another because the very same issues will come before the Court shortly at a confirmation hearing. Obviously, a main issue (possibly the only real issue)

---

[1] As of fiscal year ending January 2006, the amount owing on the note was approximately $98 million.

at that hearing will be whether there is any residual value for equity based on the Debtors' financial position as of the date of confirmation. Under the circumstances of this case, it would be unduly prejudicial to all parties to make a preliminary determination on this issue for purposes of this motion, except to find that the issue of solvency is disputed by the parties and that the parties appear well prepared on the issue for a confirmation hearing in the near future.

In any event, apart from the issue of solvency, the following facts demonstrate that under the unusual (perhaps unique) circumstances of this case, the *ad hoc* committee has met its burden of demonstrating that an equity committee is "necessary" within the meaning of § 1102(a)(2). As the testimony of the Debtors' chief financial officer confirmed, the plan of reorganization is the second stage of a financial restructuring of the Debtors. In the first stage, the Lenders received 62% of the Debtors' equity as well as the right to elect six of the nine directors. It is the subsequent Board that endorsed a plan of reorganization that wipes out old equity and allocates all of the equity of the reorganized companies to those Lenders who are not being paid in full. The U.S. Trustee's submission to the Court cites *Commodities Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) for the proposition that "[a] company's board of directors acts for the shareholders and the insolvency of a company does not absolve the board of its fiduciary duty to the shareholders." Nevertheless, in this case, the usual presumption that the Board will pay due (perhaps special) regard to the interests of shareholders may be unrealistic. The Court took testimony from the Debtors' chief executive officer and chief financial officer and based thereon has no reason to believe that the Debtors' Board did not act with due regard for its fiduciary duties in connection

5

with either the first or the second stage of the financial restructuring.  The *ad hoc* committee's assertions as to the existence of wrongdoing on the part of everyone other than the equity have played no part in the instant decision.  It cannot be disputed, however, that certain of the checks and balances present in most cases are not present here.

A second balance that does not exist at this stage in these cases is an unsecured Creditors Committee with a clear mission.  It was the Debtors' position at the outset of the cases that a committee would be superfluous because the plan provides for payment in full of all unsecured claims.  An official unsecured creditors committee has now been formed, but it was the Debtors' position at the hearing that there is *no* general unsecured debt in the case.[2]  Counsel for the Creditors Committee described several committee members who may have claims, but most of those claims are either disputed or are scheduled for payment in full under prior orders of the Court.  Moreover, all general unsecured claims (if any) will be paid in full under the Debtors' plan, making the Committee the least likely party in interest to challenge the *status quo*.  The Court finds no indication that the creditors committee or its counsel are failing to act properly under the circumstances, but the usual checks and balances are not present.

The opponents of the present motion argue that the members of the *ad hoc* committee are all funds that bought the Debtors' stock for pennies (after the filing date, in some cases) and can afford to continue to represent their interests vigorously in these cases.  In many cases, these factors would weigh against the appointment of an official committee.  See *In re Four Seasons Nursing Ctrs., Inc.*, 472 F.2d 747, 750 (10th Cir. 1973).  In the present situation, it is equally important to have a committee that does not

---

[2] There is no dispute that the PBGC has a substantial unsecured claim.

6

merely represent only the interests of those who invest in distressed debt or equity. An official equity committee would take on a fiduciary duty to all current shareholders and its compensation would be subject to the approval of the Court. Counsel for the *ad hoc* committee represented that the formation of an official committee would not result in unnecessary delay of a confirmation hearing on the Debtors' plan, and based on the valuation work that has already been performed by both sides, a hearing can be scheduled very promptly.

Contrary to the Debtors' argument, the foregoing analysis does not mean that an equity committee would be required in any prepackaged case that proposed to convert some of the debt to equity, to pay trade creditors in full and to wipe out the old shareholders. In the usual case, such a plan would be negotiated by a Board that was elected by the old equity and had a due regard for the preservation of value for the equity, if there was any value to preserve. The Court emphasizes again that it is not finding that there was impropriety at any point in the Debtors' restructuring, but a due regard for appearances also warrants the appointment of an equity committee, if only to dispel any implication that, here, a group of creditors took control of the Board of Directors in the first stage of a two-stage restructuring, neutralized the general unsecured creditors and then took for itself the value of the remaining equity. In these cases, all parties in interest and the public interest would benefit from the appointment of an equity committee.

The United States Trustee is accordingly directed to appoint an official equity committee in the above-captioned cases as promptly as possible.  IT IS SO ORDERED.

Dated:  New York, New York
      May 4, 2006

                              */s/ Allan L. Gropper*
                              UNITED STATES BANKRUPTCY JUDGE