IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

In re: )
) Chapter 11
ONEIDA LTD., et al., )
) Case No. 06-10489 (ALG)
Debtors. )
) Jointly Administered


DEBTORS' FIRST AMENDED JOINT PRENEGOTIATED PLAN OF REORGANIZATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Douglas P. Bartner, Esq.
Michael H. Torkin, Esq.
Bryan R. Kaplan, Esq.
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
(212) 848-4000


ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

# TABLE OF CONTENTS

Page

## ARTICLE I

### DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

Section 1.1. Defined Terms .................................................................................................................... 1
Section 1.2. Rules of Interpretation and Computation of Time ........................................................... 8

## ARTICLE II

### ADMINISTRATIVE AND PRIORITY TAX CLAIMS

Section 2.1. Administrative Claims ....................................................................................................... 9
Section 2.2. Priority Tax Claims ........................................................................................................... 9
Section 2.3. Professional Fees .............................................................................................................. 9
Section 2.4. Claims Under DIP Credit Agreement .............................................................................. 9

## ARTICLE III

### CLASSIFICATION AND TREATMENT OF CLAIMS AND  ONEIDA EQUITY INTERESTS

Section 3.1. Classification ..................................................................................................................... 9
Section 3.2. Acceptances and Rejections ............................................................................................ 11
Section 3.3. Treatment of Claims and Oneida Equity Interests ......................................................... 11
Section 3.4. Miscellaneous .................................................................................................................. 13

## ARTICLE IV

### CRAM DOWN

## ARTICLE V

### MEANS FOR IMPLEMENTATION OF THE PLAN

Section 5.1. Substantive Consolidation for Purposes of Voting, Confirmation and Distribution ...................... 14
Section 5.2. Restructuring Transactions ............................................................................................. 14
Section 5.3. Continued Corporate Existence and Vesting of Assets in Reorganized Oneida ............................ 15
Section 5.4. Cancellation of Oneida Equity Interests ......................................................................... 15
Section 5.5. Execution of Related Documents .................................................................................... 15
Section 5.6. Corporate Governance, Directors and Officers, and Corporate Action ......................... 15
Section 5.7. Sources of Cash for Plan Distribution ............................................................................ 16
Section 5.8. Elimination of Classes .................................................................................................... 16
Section 5.9. Issuance and Distribution of Tranche B Common Stock ................................................ 16
Section 5.10. Management Incentive Plan ........................................................................................... 17
Section 5.11. Bank of America L/C ..................................................................................................... 17

## ARTICLE VI

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 6.1. Assumption of Executory Contracts and Unexpired Leases ........................................... 17
Section 6.2. Claims Based on Rejection of Executory Contracts or Unexpired Leases ..................... 17
Section 6.3. Cure of Defaults for Assumed Executory Contracts and Unexpired Leases .................. 17
Section 6.4. Indemnification of Directors, Officers and Employees .................................................. 18
Section 6.5. Compensation and Benefit Programs .............................................................................. 18

Section 6.6. Deferred Compensation Plan ..................................................................................................... 18
Section 6.7. Oneida Stock Option/Ownership Plans....................................................................................... 18

## ARTICLE VII

### PROVISIONS GOVERNING DISTRIBUTIONS

Section 7.1. Distribution for Claims Allowed as of the Effective Date ............................................................ 19
Section 7.2. Distribution by the Reorganized Debtors .................................................................................... 19
Section 7.3. Delivery and Distributions and Undeliverable or Unclaimed Distributions .................................. 19
Section 7.4. Timing and Calculation of Amounts to Be Distributed ................................................................ 20
Section 7.5. Setoffs and Recoupments .......................................................................................................... 20
Section 7.6. Surrender of Canceled Oneida Equity Interests ......................................................................... 20
Section 7.7. Fractional Shares of Reorganized Oneida Common Stock .......................................................... 20
Section 7.8. Manner of Payment Under Plan of Reorganization .................................................................... 20

## ARTICLE VIII

### PROCEDURES FOR RESOLVING DISPUTED CLAIMS

Section 8.1. Prosecution of Objections to Claims .......................................................................................... 21
Section 8.2. Estimation of Claims ................................................................................................................. 21
Section 8.3. Payments and Distributions on Disputed Claims ........................................................................ 21

## ARTICLE IX

### CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF THE PLAN

Section 9.1. Conditions Precedent to Confirmation ........................................................................................ 21
Section 9.2. Conditions Precedent to Occurrence of the Effective Date .......................................................... 22
Section 9.3. Waiver of Conditions ................................................................................................................ 22
Section 9.4. Effect of Non-Occurrence of Effective Date Conditions .............................................................. 22
Section 9.5. Substantial Consummation of Plan ............................................................................................ 23

## ARTICLE X

### RELEASE, INJUNCTIVE AND RELATED PROVISIONS

Section 10.1. Subordination .......................................................................................................................... 23
Section 10.2. Releases .................................................................................................................................. 23
Section 10.3. Preservation of Rights of Action .............................................................................................. 24
Section 10.4. Exculpation ............................................................................................................................. 24
Section 10.5. Injunction ............................................................................................................................... 25

## ARTICLE XI

### RETENTION OF JURISDICTION

## ARTICLE XII

### MISCELLANEOUS PROVISIONS

Section 12.1. Dissolution of Committees ....................................................................................................... 27
Section 12.2. Payment of Statutory Fees ....................................................................................................... 27
Section 12.3. Discharge of Debtors ............................................................................................................... 27
Section 12.4. Modification of Plan ................................................................................................................ 27
Section 12.5. Revocation of Plan .................................................................................................................. 28
Section 12.6. Successors and Assigns ........................................................................................................... 28

Section 12.7. Reservation of Rights.............................................................................................28
Section 12.8. Section 1145 Exemption .......................................................................................28
Section 12.9. Headings ................................................................................................................28
Section 12.10. Governing Law ....................................................................................................28
Section 12.11. Severability ..........................................................................................................28
Section 12.12. Implementation ....................................................................................................29
Section 12.13. Inconsistency .......................................................................................................29
Section 12.14. Further Assurances ..............................................................................................29
Section 12.15. Service of Documents..........................................................................................29
Section 12.16. Exemption from Certain Transfer Taxes..............................................................29
Section 12.17. Compromise of Controversies .............................................................................30
Section 12.18. No Admissions......................................................................................................30
Section 12.19. Filing of Additional Documents ..........................................................................30
Section 12.20. Allocation of Payments........................................................................................30

DEBTORS' JOINT PRENEGOTIATED PLAN OF REORGANIZATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Oneida, Sakura, Buffalo China, Delco, Kenwood, Oneida Food, Oneida International, Oneida Silversmiths and THC, as debtors and debtors in possession in the above-captioned cases, hereby respectfully propose the following First Amended Joint Prenegotiated Plan of Reorganization under chapter 11 of the Bankruptcy Code. The only Entities and Persons entitled to vote on the Plan are Holders of Secured Prepetition Lender Claims and Secured PBGC Claims and such Entities and Persons are encouraged to read the Plan and the accompanying Disclosure Statement and their respective exhibits in their entirety before voting to accept or reject the Plan. No materials other than the Plan, the Plan Supplement, the Disclosure Statement and their respective exhibits and schedules, if any, attached thereto or referenced therein have been authorized by the Debtors for use in soliciting acceptances or rejections of the Plan.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

Section 1.1. *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

"Administrative Claim" means a Claim for costs and expenses of administration under section 503(b)(1) or 507(b) of the Bankruptcy Code, including for: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors; (b) compensation for services and reimbursement of expenses under section 330(a) or 331 of the Bankruptcy Code and other Professional Fees; (c) any indebtedness or obligations, other than under the DIP Credit Agreement, incurred by or assumed by the Debtors during the Chapter 11 Cases; and (d) all fees and charges assessed against the Estates under 28 U.S.C. §§ 1911-1930.

"Allowed" means any Claim or portion thereof against any Debtor, (a) proof of which was filed within the applicable period of limitation, if any, fixed by the Bankruptcy Court in accordance with Bankruptcy Rule 3003(c)(3) as to which (i) no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, (ii) any objection has been settled, waived, withdrawn or denied by a Final Order or (iii) if an objection has been interposed, such Claim as has been allowed (whether in whole or in part) by a Final Order, (b) which, if no proof of claim was so filed, has been listed by a Debtor in its Schedules, if any, as liquidated in an amount and not disputed or contingent and as to which (i) no objection to the allowance thereof, or action to equitably subordinate or otherwise limit recovery with respect thereto, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order, (ii) any objection has been settled, waived, withdrawn or denied by a Final Order or (iii) if an objection has been interposed, such Claim as has been allowed (whether in whole or in part) by a Final Order, (c) which Claim arises from the recovery of property under section 550 or 553 of the Bankruptcy Code and is allowed in accordance with section 502(h) of the Bankruptcy Code, (d) which Claim is expressly allowed under the Plan, (e) which Claim is allowed by a Final Order or (f) which Claim is not otherwise objected to or disputed; *provided, however,* that with reference to any Claim, the term "Allowed" for purposes of distribution under the Plan shall not include, unless otherwise specified in the Plan, interest on such Claim from and after the Petition Date.

"Bank of America L/C" means that certain letter of credit, in the amount of $10,950,747, issued by BofA in favor of the Worker's Compensation Board, State of New York.

"Bankruptcy Code" means title 11 of the United States Code as in effect on the Petition Date, as it has been or may after the Petition Date be amended to the extent applicable to the Chapter 11 Cases.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the General Orders or local rules of the Bankruptcy Court, each as in effect on the Petition Date and as each has been or may after the Petition Date be amended to the extent applicable in the Chapter 11 Cases.

"BofA" means Bank of America, N.A.

"Buffalo China" means Buffalo China, Inc., a New York corporation.

"Business Day" means any day, other than a Saturday, Sunday or a "legal holiday", as defined in Bankruptcy Rule 9006(a).

"Cash" means legal tender of the United States of America or the equivalent thereof, including bank deposits, checks and cash equivalents.

"BofA Cash Collateral" means any cash collateral held by BofA as security for the Bank of America L/C.

"Causes of Action" means all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, rights to legal remedies, rights to equitable remedies, rights to payment and claims, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances or trespasses whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or indirectly or derivatively, in law, equity or otherwise.

"Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

"Claim" means a claim as defined in section 101(5) of the Bankruptcy Code against any of the Debtors, whether or not asserted.

"Class" means a class of Claims or Oneida Equity Interests as set forth in Article III of the Plan.

"Committees" means, together, the Official Committee of Unsecured Creditors and the Official Committee Equity Security Holders appointed in these Chapter 11 Cases.

"Confirmation" means the confirmation of the Plan by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code.

"Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court in its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing to consider Confirmation of this Plan held pursuant to section 1128 of the Bankruptcy Code.

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code in form and substance satisfactory to the Debtors.

"D&O Releasees" means all officers, directors, employees, attorneys, financial advisors, accountants, investment bankers, agents and representatives of the Debtors and their affiliates who served in such capacity as of the Petition Date, in each case in their capacity as such.

"Debtors" means, collectively, Oneida, Sakura, Buffalo China, Delco, Kenwood, Oneida Food, Oneida International, Oneida Silversmiths and THC, as debtors and debtors in possession in the Chapter 11 Cases.

"Deferred Compensation Plan" means the Oneida Ltd. Deferred Compensation Plan for Key Employees, restated effective November 1, 1999, as amended.

"Deferred Compensation Plan Participant" means any participant in the Deferred Compensation Plan.

"Delco" means Delco International, Ltd., a New York corporation.

"DIP Agent" means JPMCB, as administrative and collateral agent under the DIP Credit Agreement, or any successor administrative agent thereunder.

"DIP Credit Agreement" means the Revolving Credit and Guaranty Agreement among Oneida, as borrower, each of the other Debtors, as guarantors, the lenders party thereto from time to time and the DIP Agent, as such may be amended or otherwise modified from time to time in accordance with the terms thereof.

"Disallowed" means, as to any Claim against the Debtors, one that has been disallowed, in whole or in part, by a Final Order, or which has been withdrawn, in whole or in part, by the Holder thereof.

"Disclosure Statement" means that certain Disclosure Statement, dated March 19, 2006, as amended, supplemented or modified from time to time, relating to the Plan, including, without limitation, any exhibits and schedules thereto.

"Disputed" means, with respect to any Claim, any Claim: (a) that is listed on the Schedules as unliquidated, disputed or contingent; (b) as to which the Debtors or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation or dispute has not been settled, waived, withdrawn or determined by a Final Order; (c) during the period prior to the deadline fixed by the Plan or the Bankruptcy Court for objecting to such Claim, that exceeds the amount listed on the Schedules other than as unliquidated, disputed or contingent or (d) that is neither Allowed nor Disallowed.

"Distribution Record Date" mean the close of business on the day that the Plan is Confirmed.

"Effective Date" means the first Business Day on which all conditions specified in Article IX of the Plan have been satisfied or, if capable of being waived, have been waived in accordance with Section 9.3 hereof.

"Entity" means an entity as defined in section 101(15) of the Bankruptcy Code.

"Equity Interest" means any equity interest of or in such Entity including, but not limited to, all issued, unissued, authorized or outstanding shares, stock or other instruments evidencing an ownership interest in such Entity, together with any Stock Rights.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated thereunder.

"Estates" means the estates of the Debtors created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

"Exit Facility" means that certain $170 million credit facility to be provided to Reorganized Oneida pursuant to the terms and conditions of the Exit Facility Commitment, substantially in the form attached to the Plan Supplement.

"Exit Facility Agent" means Credit Suisse, as administrative agent under the Exit Facility.

"Exit Facility Commitment" means a commitment for a $170 million credit facility, a copy of which is attached to the Disclosure Statement, containing substantially the terms and conditions set forth in that certain commitment letter by and between Oneida and the Exit Facility Agent in form and substance otherwise satisfactory

to the Debtors and the Exit Facility Agent, as such commitment may be amended or otherwise modified from time to time on terms and conditions satisfactory to the Debtors and the Exit Facility Agent.

"Exit Facility Documents" means the agreements, notes, certificates, documents and instruments and all exhibits, schedules and annexes thereto entered into in connection with the Exit Facility, substantially in the form attached to the Plan Supplement and in form and substance otherwise satisfactory to the Debtors and the Exit Facility Agent.

"Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which such order or judgment (or any revision, modification or amendment thereof) the time to appeal or seek review, rehearing or certiorari has expired and no appeal or petition for review, rehearing or certiorari has been timely taken, or as to which any appeal that has been taken or any petition for review, rehearing or certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which review, rehearing or certiorari was sought.

"General Unsecured Claim" means any Claim against any of the Debtors that is not an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, an Other Secured Claim, a Secured PBGC Claim, a Specified Unsecured Claim, a Secured Prepetition Lender Claim or a Subordinated Claim, but including, without limitation, Claims arising from the rejection of an unexpired lease or executory contract pursuant to Article VI of the Plan or otherwise.

"Holder" means the beneficial holder of any Claim or Oneida Equity Interest.

"Impaired" means a Claim or Oneida Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Intercompany Claim" means (a) any account reflecting intercompany book entries by one Debtor or its non-Debtor affiliate with respect to another Debtor or its non-Debtor affiliate, (b) any Claim that is not reflected in such book entries and is held by one Debtor or its non-Debtor affiliate against another Debtor or its non-Debtor affiliate, or (c) any Interest in a Debtor or non-Debtor affiliate held by another Debtor or non-Debtor affiliate.

"Interests" means (a) Oneida Equity Interests and (b) equity securities as defined in section 101(16) of the Bankruptcy Code.

"Italian Guarantee" means Oneida's guarantee of that certain letter of credit, in the amount of approximately €2,325,000, issued by Banca Nazionale Del Lavoro, Spa in favor of Oneida Italy SRL, approximately €1,000,000 of which was outstanding as of the Petition Date.

"Italian Guarantee Claim" means all Claims held by any Holder of the Italian Guarantee.

"JPMCB" means JPMorgan Chase Bank, N.A.

"Kenwood" means Kenwood Silver Company, Inc., a New York corporation.

"Lien" means a lien as defined in section 101(37) of the Bankruptcy Code against property of any of the Debtors.

"Management Incentive Plan" means the post-Effective Date incentive compensation plan, to be adopted by the Reorganized Oneida Board of Directors, in the form of a stock option or other similar program representing a number of shares of Reorganized Oneida Common Stock as shall be determined by the Board, and as will be set forth in the Plan Supplement, involving not more than ten percent (10%) of the Reorganized Oneida Common Stock.

"Oneida" means Oneida Ltd., a New York corporation.

"Oneida Common Stock" means the common stock of Oneida, $1.00 par value per share.

"Oneida Equity Interest" means each Equity Interest of Oneida, including without limitation, the Oneida Common Stock the Oneida Preferred Stock and the Oneida Stock Rights existing immediately prior to the consummation of this Plan on the Effective Date.

"Oneida Food" means Oneida Food Service, Inc., a New York corporation.

"Oneida International" means Oneida International Inc., a New York corporation.

"Oneida Plan" means the Retirement Plan for the Employees of Oneida Ltd. CFEIN/PN: 15-0405700/001.

"Oneida Preferred Stock" means the six percent (6%) cumulative preferred stock of Oneida, par value $25.00 per share.

"Oneida Silversmiths" means Oneida Silversmiths Inc., a New York corporation.

"Oneida Stock Option/Ownership Plans" means the Oneida Ltd. 1998 Stock Option Plan, the Oneida Ltd. 2002 Stock Option Plan, the Oneida Ltd. 2003 Non-Employee Directors Stock Option Plan and the Oneida Ltd. Employee Stock Ownership Plan.

"Oneida Stock Rights" means any Stock Rights in Oneida, including without limitation, any options granted under the Oneida Stock Option/Ownership Plans.

"Other Priority Claims" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"Other Secured Claim" means a Secured Claim that is not a Secured Prepetition Lender Claim or a Secured PBGC Claim.

"PBGC" means the Pension Benefit Guaranty Corporation.

"PBGC Liens" means any tax liens filed by the PBGC prior to the Petition Date pursuant to 26 U.S.C. § 412(n) on behalf of any Pension Plan.

"PBGC Note" means, (x) in the event that Class 3 votes to accept, and does not object to, the Plan, an unsecured variable interest promissory note in the principal amount of $3 million and (y) in the event that Class 3 votes to reject, or objects to, the Plan, an unsecured non-interest bearing promissory note in the principal amount of $3 million, in either case, substantially in the form attached to the Plan Supplement, to be issued to the PBGC pursuant to Article III hereof.

"PBGC Senior Collateral" means all property of the Debtors which (x) is not subject to a Lien in favor of the Prepetition Lenders and (y) is subject to a PBGC Lien.

"Pension Plans" means the following tax qualified single-employer defined benefit pension plans maintained by Oneida and Buffalo China, as applicable:  (i) the Oneida Plan, for which Oneida is the plan sponsor; (ii) the Retirement Income Plan for Employees of Buffalo China, Inc. (FEIN/PN: 16-0979731/001), for which Buffalo China is the plan sponsor; and (iii) the GMP – Buffalo China, Inc. Pension Plan for Employees Who Are Members of Local 76A (FEIN/PN: 16-0979731/003), for which Buffalo China is the plan sponsor.

"Person" means a person as defined in section 101(41) of the Bankruptcy Code.

"Petition Date" means the date on which the Debtors filed their petitions for relief commencing the Chapter 11 Cases.

"Plan" means this First Amended Joint Prenegotiated Plan of Reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order.

"Plan Documents" means the agreements, documents and instruments to be entered into on or as of the Effective Date as contemplated by, and in furtherance of, the Plan, substantially in the forms contained in the exhibits to the Plan, Disclosure Statement and Plan Supplement.

"Plan Supplement" means the compilation of documents and forms of documents and exhibits substantially in the forms filed with the Bankruptcy Court not less than ten days prior to the Voting Deadline, as such documents and exhibits may be altered, amended, modified or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules.

"Prepetition Agent" means JPMCB, as administrative and collateral agent under the Prepetition Credit Agreement.

"Prepetition Credit Agreement" means the Second Amended and Restated Credit Agreement dated as of August 9, 2004 among Oneida, the Prepetition Lenders and JPMCB, as administrative agent, as amended by an Amendment No. 1 to the Second Amended and Restated Credit Agreement dated as of October 15, 2004, a Consent and Amendment No. 2 to the Second Amended and Restated Credit Agreement dated as of February 2, 2005, a Consent, Waiver and Amendment No. 3 to the Second Amended and Restated Credit Agreement dated as of April 7, 2005, and an Amendment No. 4 to the Second Amended and Restated Credit Agreement dated as of June 23, 2005.

"Prepetition Credit Documents" means the Prepetition Credit Agreement, together with all related notes, certificates, security agreements, mortgages, pledges, guaranties, instruments and other documents executed or delivered by any Debtor in connection therewith, as each may have been amended, supplemented or modified from time to time.

"Prepetition Lenders" means the financial institutions party to the Prepetition Credit Agreement.

"Priority Tax Claim" means a Claim of a governmental unit of the kind specified in section 507(a)(9) of the Bankruptcy Code.

"Professional Fees" means all allowances of compensation and reimbursement of expenses allowed to (a) Professionals pursuant to section 330 or 331 of the Bankruptcy Code or (b) any Person making a claim for compensation under section 503(b) of the Bankruptcy Code.

"Professionals" means an Entity or Person employed pursuant to a Final Order in accordance with section 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to section 327, 328, 329, 330 or 331 of the Bankruptcy Code.

"Ratable Portion" means, with reference to any distribution on account of any Allowed Claim in any Class, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of Allowed Claims in such Class.

"Reinstated" or "Reinstatement" means (i) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (a) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (b) reinstating the maturity of such Claim as such maturity existed before such default, (c) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law and (d) not otherwise altering the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim.

"Reorganized Debtors" means the Debtors and any successors thereto, by merger, consolidation or otherwise, as reorganized on or after the Effective Date.

"Reorganized Oneida" means Oneida, as reorganized on and after the Effective Date.

"Reorganized Oneida Board of Directors" means the board of directors of Reorganized Oneida, on and after the Effective Date, the members of which are disclosed in the Plan Supplement.

"Reorganized Oneida By-Laws" means the By-Laws of Reorganized Oneida, which shall become effective on the Effective Date, substantially in the form attached to the Plan Supplement.

"Reorganized Oneida Certificate of Incorporation" means the Certificate of Incorporation of Reorganized Oneida, which shall be filed on or before the Effective Date, substantially in the form attached to the Plan Supplement.

"Reorganized Oneida Common Stock" means the common stock of Reorganized Oneida, par value $0.01 per share, to be authorized pursuant to the Reorganized Oneida Certificate of Incorporation.

"Requisite Tranche A Holders" means Holders of greater than fifty percent (50%) of the Secured Tranche A Claims.

"Requisite Tranche B Holders" means Holders of greater than fifty percent (50%) of the Secured Tranche B Claims.

"Schedules" means the schedules, if any, of assets and liabilities, schedules of executory contracts, and the statement of financial affairs of one or more of the Debtors filed pursuant to section 521 of the Bankruptcy Code, the Official Bankruptcy Forms and the Bankruptcy Rules, as they may be amended or supplemented from time to time.

"Secured Claim" means, with respect to any Debtor, a Claim that is secured by a Lien on, or security interest in, property of any such Debtor, or that has the benefit of rights of setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the creditor's interest in such Debtor's interest in such property, or to the extent of the amount subject to setoff, which value shall be determined as provided in section 506 of the Bankruptcy Code.

"Secured PBGC Claim" means the face amount of the PBGC Liens plus accrued interest from the date such payment was due, which amount is owed to the Oneida Plan in respect of certain missed minimum funding contributions for the 2004 and 2005 plan years pursuant to Section 302 of ERISA.

"Secured Prepetition Lender Claims" means the aggregate of the Secured Tranche A Claims and Secured Tranche B Claims.

"Secured Tranche A Claims" means all amounts owing to Holders of Tranche A Loans under the Prepetition Credit Documents, including all accrued but unpaid interest (at the nondefault rate), fees, expenses and other charges in respect of such amounts as provided in the Prepetition Credit Documents.

"Secured Tranche B Claims" means all amounts owing to Holders of Tranche B Loans under the Prepetition Credit Documents, including all accrued but unpaid interest (at the nondefault rate), fees, expenses and other charges in respect of such amounts as provided in the Prepetition Credit Documents and all deficiency claims in respect thereof, as applicable.

"Securities Act" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

"Specified Unsecured Claims" means the aggregate of the Unsecured PBGC Claims and the Italian Guarantee Claim.

"Stock Rights" means (a) conversion, exchange, voting, participation and dividend rights; (b) liquidation preferences; (c) options, warrants, calls, rights, puts, awards, and commitments; (d) share-appreciation rights; (e) any other rights of a similar nature; and (f) any agreements granting any of the foregoing.

"Stockholders' Agreement" means a Stockholders' Agreement, substantially in the form attached to the Plan Supplement.

"Subordinated Claim" means any Claim arising in connection with any Oneida Equity Interest, including, without limitation, Claims arising from the rescission of a purchase or sale of any Oneida Equity Interest, for damages arising from the purchase or sale of such Oneida Equity Interest, or for reimbursement or contribution under section 502 of the Bankruptcy Code on account of such Claim, and attorneys' fees associated therewith, to the extent subordinated under section 510(b) of the Bankruptcy Code.

"Substantive Consolidation Order" means the order, or provision of the Confirmation Order, substantively consolidating the Chapter 11 Cases (for voting, confirmation and distribution purposes only and as more particularly provided in Section 5.1 of this Plan).

"THC" means THC Systems, Inc., a New York corporation.

"Tranche A Distribution" means the distribution to Holders of Secured Tranche A Claims.

"Tranche A Loan" has the meaning set forth in the Prepetition Credit Agreement.

"Tranche B Common Stock" means a number of shares of Reorganized Oneida Common Stock equal to 100% of the issued and outstanding Reorganized Oneida Common Stock as of the Effective Date.

"Tranche B Distribution" means the distribution to Holders of Secured Tranche B Claims.

"Tranche B Loan" has the meaning set forth in the Prepetition Credit Agreement.

"Unimpaired" means a Claim that is not Impaired.

"Unsecured PBGC Claims" means the aggregate amount owed to the PBGC in connection with the distressed termination of the Pension Plans including pursuant to 29 U.S.C. §§ 1341(c)(2)(B)(ii), as amended and any deficiency claims of the PBGC in respect of the Secured PBGC Claim.

"Voting Deadline" means the date by which ballots must be properly executed, completed and transmitted to the Debtors' solicitation agent in order to be counted as a vote to accept or reject the Plan, as may be extended by the Debtors from time to time.

Section 1.2. *Rules of Interpretation and Computation of Time*

(a)     For purposes of the Plan:  (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (ii) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (iv) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (v) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (viii) any term used in capitalized form

in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(b)        In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

# ARTICLE II

## ADMINISTRATIVE AND PRIORITY TAX CLAIMS

Section 2.1. *Administrative Claims*

Subject to the provisions of sections 330(a), 331 and 503(b) of the Bankruptcy Code, each Administrative Claim that is Allowed shall be paid by the Debtors, in full, in Cash, in such amounts as are incurred in the ordinary course of business by the Debtors, or in such amounts as such Administrative Claim is Allowed by the Bankruptcy Court (a) upon the later of the Effective Date or, if such Claim is Allowed after the Effective Date, the date upon which there is a Final Order allowing such Administrative Claim, (b) upon such other terms as may exist in the ordinary course of such Debtor's business and in accordance with the terms of any agreement governing or documents evidencing such Administrative Claim, or (c) as may be agreed upon between the Holder of such Allowed Administrative Claim and the Debtors.

Section 2.2. *Priority Tax Claims*

Each Allowed Priority Tax Claim shall be paid by the Debtors in full, in Cash, upon the later of (a) the Effective Date, (b) the date upon which there is a Final Order allowing such Priority Tax Claim, (c) the date such an Allowed Priority Tax Claim would have been due and payable if the Chapter 11 Cases had not been commenced, or (d) as may be agreed upon between the Holder of such an Allowed Priority Tax Claim and the Debtors.

Section 2.3. *Professional Fees*

All final applications for Professional Fees for services rendered in connection with the Chapter 11 Cases prior to the Confirmation Date shall be filed with the Bankruptcy Court not later than sixty days after the Effective Date.  Without limiting the foregoing, Oneida or Reorganized Oneida, as the case may be, may pay the charges incurred by the Debtors and the Committees on or after the Confirmation Date for Professionals' fees, disbursements, expenses, or related support services without application to or approval by the Bankruptcy Court.

Section 2.4. *Claims Under DIP Credit Agreement*

On the Effective Date, all Obligations (as defined in the DIP Credit Agreement) under the DIP Credit Agreement shall be paid in full in Cash or as otherwise provided in the DIP Credit Agreement.

# ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND  ONEIDA EQUITY INTERESTS

Section 3.1. *Classification*

The categories of Claims and Oneida Equity Interests listed below classify Claims and Oneida Equity Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Oneida Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Oneida Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Oneida Equity Interest qualifies within the description of such different Class.  A Claim or Oneida Equity Interest is in a particular Class only to the extent that such Claim or Oneida Equity Interest is Allowed in that Class and has not

been paid or otherwise settled prior to the Effective Date. Intercompany Claims are not classified and shall be reinstated or discharged in accordance with Section 5.1 hereof.

Summary of Classification and Treatment of Claims and Oneida Equity Interests

| Class | Claim | Status | Voting Right |
|---|---|---|---|
| 1. | Secured Tranche A Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 2. | Secured Tranche B Claims | Impaired | Entitled to Vote |
| 3. | Secured PBGC Claims | Impaired | Entitled to Vote |
| 4. | Other Secured Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 5. | Other Priority Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 6. | General Unsecured Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 7. | Specified Unsecured Claims | Impaired; not entitled to receive any distribution under the Plan | Deemed to Reject; Not Entitled to Vote |
| 8. | Subordinated Claims | Impaired; not entitled to receive any distribution under the Plan | Deemed to Reject; Not Entitled to Vote |
| 9. | Oneida Equity Interests | Impaired; not entitled to receive any distribution under the Plan | Deemed to Reject; Not Entitled to Vote |

Claims (except for Administrative Claims and Priority Tax Claims, which are not required to be classified pursuant to section 1123(a)(i) of the Bankruptcy Code) are classified as follows:

Claims Against the Debtors and Oneida Equity Interests

(i)      Class 1—Secured Tranche A Claims

(ii)     Class 2—Secured Tranche B Claims

(iii)    Class 3—Secured PBGC Claims

(iv)     Class 4—Other Secured Claims

(v)      Class 5—Other Priority Claims

(vi)     Class 6—General Unsecured Claims

(vii)    Class 7—Specified Unsecured Claims

(viii)   Class 8—Subordinated Claims

(ix) Class 9—Oneida Equity Interests

Section 3.2. *Acceptances and Rejections*

(a) Each of Class 1, Class 4, Class 5 and Class 6 is Unimpaired under the Plan and Holders of Claims in such Classes are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote on the Plan.

(b) Each of Class 2 and Class 3 is Impaired and is entitled to vote to accept or reject the Plan.

(c) Each of Class 7, Class 8 and Class 9 is Impaired under the Plan and Holders of Claims and Oneida Equity Interests in such Classes are conclusively presumed to have rejected the Plan and, therefore, are not entitled to vote on the Plan.

Section 3.3. *Treatment of Claims and Oneida Equity Interests*

(a) *Class 1—Secured Tranche A Claims*

(i) *Treatment*: Each Secured Tranche A Claim shall constitute an Allowed Secured Tranche A Claim. On the Effective Date or as soon as practicable thereafter, each Holder of a Secured Tranche A Claim shall receive Cash equal to the Secured Tranche A Claim held by such Holder. Subject to Section 5.11 hereof, if the Bank of America L/C is outstanding following the Effective Date, BofA shall receive (x) a cash deposit or (y) an irrevocable letter of credit issued under the Exit Facility in an amount, in each instance, equal to 105 percent (105%) of the face amount of the outstanding Bank of America L/C, less any BofA Cash Collateral.

(ii) *Voting*: Class 1 is Unimpaired. Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

(b) *Class 2—Secured Tranche B Claims*

(i) *Treatment*: Each Secured Tranche B Claim shall constitute an Allowed Secured Tranche B Claim. On the Effective Date or as soon as practicable thereafter, the Holders of Secured Tranche B Claims, in the aggregate, shall receive the Tranche B Common Stock and each Holder of a Secured Tranche B Claim or, in the case of any Holder of a Tranche B Claim that is unable to hold shares of Reorganized Common Stock, the designee(s) of such Holder, shall receive that number of shares of Reorganized Oneida Common Stock equal to such Holder's Ratable Portion of the Tranche B Common Stock; *provided*, *however*, that in no event will there be more than 50 Holders of Tranche B Common Stock on the Effective Date.

(ii) *Voting*: Class 2 is Impaired. Holders of the Secured Tranche B Claims are entitled to vote to accept or reject the Plan.

(c) *Class 3—Secured PBGC Claims*

(i) *Treatment*: Each Secured PBGC Claim shall constitute an Allowed Secured PBGC Claim up to the value of the PBGC Senior Collateral. On the Effective Date or as soon as practicable thereafter, Holders of Secured PBGC Claims shall receive such Holder's Ratable Portion of the PBGC Note.

(ii) *Voting*: Class 3 is Impaired. Holders of Secured PBGC Claims are entitled to vote to accept or reject the Plan.

(d) *Class 4—Other Secured Claims*

    (i) *Treatment*: The legal, equitable and contractual rights of the Holders of Allowed Other Secured Claims are unaltered by the Plan. Unless the Holder of such Claim and the applicable Debtor agree to a different treatment, on the Effective Date, each Holder of an Allowed Other Secured Claim shall have its Claim Reinstated.

    (ii) *Voting*: Class 4 is Unimpaired. Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

(e) *Class 5—Other Priority Claims*

    (i) *Treatment*: The legal, equitable and contractual rights of Holders of Allowed Other Priority Claims are unaltered by the Plan. Unless a Holder of an Allowed Other Priority Claim and the Debtors agree to a different treatment, each Holder of an Allowed Other Priority Claim shall receive one of the following alternative treatments, at the election of the Debtors:

        (A) to the extent then due and owing on the Effective Date, such Allowed Other Priority Claim will be paid in full, in Cash, by the Reorganized Debtors;

        (B) to the extent not due and owing on the Effective Date, such Allowed Other Priority Claim will be paid in full, in Cash, by the Reorganized Debtors when and as such Allowed Other Priority Claim becomes due and owing in the ordinary course of business in accordance with the terms thereof; or

        (C) such Allowed Other Priority Claim will be otherwise treated in any manner such that Class 5 shall not be impaired pursuant to section 1124 of the Bankruptcy Code.

    (ii) *Voting*: Class 5 is Unimpaired. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

(f) *Class 6—General Unsecured Claims*

    (i) *Treatment*: The legal, equitable and contractual rights of Holders of Allowed General Unsecured Claims are unaltered by the Plan. Unless the Holder of an Allowed General Unsecured Claim and the Debtors agree to a different treatment, each Holder of an Allowed General Unsecured Claim shall receive one of the following alternative treatments, at the election of the Debtors:

        (A) to the extent then due and owing on the Effective Date, such Allowed General Unsecured Claim will be paid in full, in Cash, by the Reorganized Debtors in accordance with the terms thereof;

        (B) to the extent not due and owing on the Effective Date, such Allowed General Unsecured Claim will be paid in full, in Cash, by the Reorganized Debtors when and as such Allowed General Unsecured Claim becomes due and owing in the ordinary course of business in accordance with the terms thereof; or

        (C) such Allowed General Unsecured Claim will be otherwise treated in any other manner such that Class 6 shall not be impaired pursuant to section 1124 of the Bankruptcy Code.

(ii)    *Voting*: Class 6 is Unimpaired. Holders of General Unsecured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

(g)    *Class 7—Specified Unsecured Claims*

(i)    *Treatment*: On the Effective Date, Specified Unsecured Claims will be discharged and each Holder thereof shall not receive or retain any distribution or property on account of its Specified Unsecured Claim.

(ii)    Voting: Class 7 is Impaired. Holders of Specified Unsecured Claims are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

(h)    *Class 8—Subordinated Claims*

(i)    *Treatment*: On the Effective Date, Subordinated Claims will be discharged and each Holder thereof shall not receive or retain any distribution or property on account of its Subordinated Claim.

(ii)    Voting: Class 8 is Impaired. Holders of Subordinated Claims are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to accept or reject the Plan.

(i)    *Class 9—Oneida Equity Interests*

(i)    *Treatment*: On the Effective Date, Oneida Equity Interests will be canceled and each Holder thereof shall not be legally entitled to receive or retain any distribution on account of its Oneida Equity Interests.

(ii)    *Voting*: Class 9 is Impaired. Holders of Oneida Equity Interests are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

**Section 3.4.** *Miscellaneous*

(a)    Notwithstanding any other provision of the Plan, any Allowed Claim shall be reduced by the amount, if any, that was paid by the Debtors to the Holder of such Claim prior to the Effective Date, including pursuant to any Final Order entered by the Bankruptcy Court. Nothing in the Plan shall preclude the Reorganized Debtors from paying Claims that the Debtors were authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

(b)    Except as otherwise provided in the Plan, the Confirmation Order, any other order of the Bankruptcy Court or any document or agreement entered into and enforceable pursuant to the terms of this Plan, nothing shall affect the Debtors' or Reorganized Debtors' Causes of Action, rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to, and setoffs or recoupments against, Unimpaired Claims and all Causes of Action for the affirmative relief against the holders thereof.

## ARTICLE IV

## CRAM DOWN

If any Impaired Class of Claims entitled to vote shall not accept the Plan, the Debtors shall seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or seek to amend or modify the Plan in

accordance with Section 12.4 hereof. With respect to any Impaired Class of Claims or Interests that is deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

Section 5.1. *Substantive Consolidation for Purposes of Voting, Confirmation and Distribution*

This Plan contemplates and is predicated upon substantively consolidating the Debtors solely for the purposes of (i) voting, (ii) confirmation and (iii) distribution in respect of Class 2 and Class 3. This Plan does not contemplate the substantive consolidation of the Debtors with respect to the other Classes of Claims or Equity Interests set forth in this Plan, or for any other purpose. On the Effective Date, (i) all guarantees of any Debtor of the payment, performance or collection of another Debtor with respect to Class 2 and Class 3 Claims shall be deemed eliminated and canceled, (ii) any obligation of any Debtor and all guarantees with respect to Class 2 and Class 3 Claims thereof executed by one or more of the other Debtors shall be treated as a single obligation, and (iii) each Class 2 or Class 3 Claim against any Debtor shall be deemed to be against the consolidated Debtors and shall be deemed a single Class 2 or Class 3 Claim against, and a single obligation of, the consolidated Debtors. On the Effective Date, and in accordance with the terms of this Plan and the consolidation of the assets and liabilities of the Debtors, all Class 2 or Class 3 Claims based upon guarantees of collection, payment, or performance made by the Debtors as to the obligations of another Debtor shall be released and of no further force and effect. Except as set forth in this Section 5.1, such substantive consolidation shall not (other than for purposes related to this Plan) (i) affect the legal and corporate structures of the Reorganized Debtors, (ii) cause any Debtor to be liable for any Claim under this Plan for which it otherwise is not liable, and the liability for any such Claim shall not be affected by such substantive consolidation, (iii) affect Intercompany Claims or (iv) affect any obligations under any leases or contracts assumed in this Plan or otherwise subsequent to the filing of the Chapter 11 Cases.

On the Effective Date, (i) the Intercompany Claims of Debtors or their affiliates against Debtors shall be reinstated or discharged and satisfied at the option of the Reorganized Debtors by contributions, distributions or otherwise and (ii) the Interests of a Debtor in any Debtor or non-Debtor subsidiary shall remain outstanding.

Unless the Bankruptcy Court has approved the substantive consolidation of the Chapter 11 Cases by a prior order, this Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Debtors as provided in this Section 5.1. If no objection to substantive consolidation is timely filed and served by any Holder of a Claim that is Impaired by this Plan as provided herein on or before the deadline for objection to Confirmation of this Plan, the Substantive Consolidation Order (which may be the Confirmation Order) may be entered by the Bankruptcy Court. A hearing with respect to the substantive consolidation of the Chapter 11 Cases and the objections thereto shall be scheduled by the Bankruptcy Court, which hearing shall coincide with the Confirmation Hearing.

Section 5.2. *Restructuring Transactions*

Prior to, on or after the Effective Date, the applicable Debtors may enter into such transactions and may take such actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses, to otherwise simplify the overall corporate structure of the Debtors, or to reincorporate certain of the Debtors under the laws of jurisdictions other than the laws of which the applicable Debtors are presently incorporated. Such restructuring may include one or more mergers, consolidations, restructurings, dispositions, liquidations, dissolutions or reincorporations, as may be determined by the Debtors to be necessary or appropriate, including, without limitation, the reincorporation of Oneida, or any other Debtor, in the State of Delaware (collectively, the "Restructuring Transactions"). The actions to effect the Restructuring Transactions may include (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, disposition, liquidation or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable state law and such other terms to which the applicable entities may agree, (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such

other terms to which the applicable entities may agree, (iii) the filing of appropriate certificates or articles of merger, consolidation or dissolution pursuant to applicable state law and (iv) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with such transactions. The Restructuring Transactions may include one or more mergers, consolidations, restructurings, dispositions, liquidations or dissolutions, as may be determined by the Debtors to be necessary or appropriate to result in substantially all of the respective assets, properties, rights, liabilities, duties and obligations of certain of the Debtors vesting in one or more surviving, resulting or acquiring corporations. In each case in which the surviving, resulting or acquiring corporation in any such transaction is a successor to a Debtor, such surviving, resulting or acquiring corporation will perform the obligations of the applicable Debtor pursuant to the Plan to pay or otherwise satisfy the Allowed Claims against such Debtor, except as provided in any contract, instrument or other agreement or document effecting a disposition to such surviving, resulting or acquiring corporation, which may provide that another Debtor will perform such obligations.

Section 5.3. *Continued Corporate Existence and Vesting of Assets in Reorganized Oneida*

Each of the Reorganized Debtors continues to exist after the Effective Date as a separate corporate entity, with all the powers of a corporation under the laws of its respective state of incorporation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such state law. Except as otherwise provided in the Plan or any agreement, instrument or indenture relating thereto, on or after the Effective Date, all property of the Estates of the Debtors, and any property acquired by the Debtors or the Reorganized Debtors under the Plan, shall vest in the Reorganized Debtors, free and clear of all Claims, Liens, charges or other encumbrances and Interests. On and after the Effective Date, the Reorganized Debtors may operate their respective businesses and may use, acquire or dispose of property and compromise or settle any Claims or Equity Interests, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Without limiting the generality of the foregoing, all rights, privileges, entitlements, authorizations, grants, permits, licenses, easements, franchises and other similar items which constitute part of, or are necessary or useful in the operation of, the property of the Estates or the business of the Reorganized Debtors, whether in the United States or elsewhere, shall be vested in the Reorganized Debtors on the Effective Date, and shall thereafter be exercisable and usable by the Reorganized Debtors to the same and fullest extent they would have been exercisable and usable by the Debtors before the Petition Date.

Section 5.4. *Cancellation of Oneida Equity Interests*

On the Effective Date, except to the extent provided elsewhere in the Plan or the Confirmation Order, and provided that the treatments provided for herein and the distributions contemplated by Article III hereof are made, all Oneida Equity Interests shall be canceled and deemed terminated.

Section 5.5. *Execution of Related Documents*

On the Effective Date, all Plan Documents, including, without limitation, the Exit Facility, the Stockholders' Agreement and any other agreement entered into or instrument issued in connection with any of the foregoing or any other Plan Document, shall be executed and delivered by the Reorganized Debtors and shall become effective and binding in accordance with their respective terms and conditions upon the parties thereto and as specified herein.

Section 5.6. *Corporate Governance, Directors and Officers, and Corporate Action*

(a)     *Reorganized Oneida Certificate of Incorporation; Reorganized Oneida By-Laws; Amendment of Other Debtors Constituent Documents.* On the Effective Date, Reorganized Oneida shall file the Reorganized Oneida Certificate of Incorporation with the Secretary of State of the State of Delaware in accordance with the applicable sections of Delaware General Corporation Law. The Reorganized Oneida Certificate of Incorporation and the Reorganized Oneida By-Laws, as applicable, will, among other things, prohibit the issuance of nonvoting equity securities to the extent required by section 1123(a) of the Bankruptcy Code. The Reorganized Oneida Certificate of Incorporation and Reorganized Oneida By-Laws, as applicable, shall provide for the number of authorized shares of Reorganized Oneida Common Stock and provide that the par value of the Reorganized Oneida

Common Stock shall be $0.01. Prior to the Effective Date, to the extent required by section 1123(a) of the Bankruptcy Code, each of the other Reorganized Debtors shall amend their respective certificates of incorporation pursuant to and in accordance with applicable state law to, or file certificates of incorporation with the Secretary of State of the State of Delaware which, provide that such Reorganized Debtors shall be prohibited from issuing nonvoting equity securities. Following the Effective Date, each of the Reorganized Debtors may amend and restate their respective certificates of incorporation and other constituent documents as permitted by applicable state law, or may reincorporate in the State of Delaware.

(b)    *Directors and Officers of the Reorganized Debtors.*  Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, and except as otherwise disclosed in the Disclosure Statement, as of the Effective Date, the initial officers of the Reorganized Debtors shall be the officers of the Debtors immediately prior to the Effective Date. On the Effective Date, the directors who are identified in the Plan Supplement to serve as directors of the Reorganized Debtors shall serve as the initial boards of directors of the Reorganized Debtors. Pursuant to section 1129(a)(5), the Debtors will disclose in the Plan Supplement, on or prior to the Confirmation Date, the identity and affiliations of any Person proposed to serve on the initial boards of directors of the Reorganized Debtors and, to the extent such Person is an insider, the nature of any compensation for such Person. The classification and composition of the boards of directors of each of the Reorganized Debtors shall be consistent with the Stockholders' Agreement, the amended and restated certificates of incorporation and other constituent documents of each of the Reorganized Debtors, and any applicable state law.

(c)    *Corporate Action.*  On the Effective Date, the adoption of the Reorganized Oneida Certificate of Incorporation, the adoption of the Reorganized Oneida By-Laws, the adoption of the applicable constituent documents of the other Reorganized Debtors, the selection of directors and officers for the Reorganized Debtors and all other actions contemplated by the Plan (whether to occur before, on or after Effective Date of the Plan) shall be authorized and approved in all respects (subject to the provisions of the Plan). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the equity holders or directors of the Debtors or the Reorganized Debtors. On the Effective Date, the appropriate officers of the Reorganized Debtors and members of the boards of directors of the Reorganized Debtors are authorized and directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtors. The authorizations and approvals of the corporate actions in this Section 5.6(c) shall be effective notwithstanding any requirements under any applicable state law or other applicable non-bankruptcy law.

Section 5.7. *Sources of Cash for Plan Distribution*

All Cash necessary for the Reorganized Debtors to make payments pursuant to the Plan shall be obtained from existing Cash balances, the operations of the Debtors or Reorganized Debtors or post-Confirmation Date borrowings under other available facilities of the Debtors or Reorganized Debtors, including, without limitation, to the extent available, the Exit Facility.

Section 5.8. *Elimination of Classes*

Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim, or a Claim temporarily allowed under Rule 3018 of the Bankruptcy Rules, shall be deemed deleted from the Plan for all purposes.

Section 5.9. *Issuance and Distribution of Tranche B Common Stock*

The issuance of Tranche B Common Stock by Reorganized Oneida is hereby authorized without the need for any further corporate action or compliance with any applicable non-bankruptcy law. On or as soon as practicable after the Effective Date, and with respect to Holders of Secured Tranche B Claims that have provided appropriate registration information prior to the Effective Date, no later than five Business Days after the Effective Date, Reorganized Oneida shall distribute, in accordance with the terms of the Plan, the Tranche B Common Stock to Holders of Secured Tranche B Claims or, in the case of any Holder of a Tranche B Claim that is unable to hold

shares of Reorganized Common Stock, to the designee(s) of such Holder; *provided*, *however*, that in no event will there be more than 50 Holders of Tranche B Common Stock on the Effective Date.

Section 5.10. *Management Incentive Plan*

Within 30 days after the Effective Date, the Management Incentive Plan shall be adopted by the Reorganized Oneida Board of Directors and shall become effective, subject to approval by a majority of the holders of Reorganized Oneida Common Stock. Following reconstitution of the Board of Directors, as contemplated by the Plan and Disclosure Statement, the Management Incentive Plan may be amended or modified by such Board.

Section 5.11. *Bank of America L/C*

If, at any time, the BofA Cash Collateral together with the cash deposited with or letter of credit issued to BofA pursuant to Section 3.3(a)(i) hereof exceeds 105 percent (105%) of the face amount of the Bank of America L/C then outstanding, BofA shall promptly remit to the Reorganized Debtors that portion of the BofA Cash Collateral, cash or letter of credit in excess of such amount.

# ARTICLE VI

# TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 6.1. *Assumption of Executory Contracts and Unexpired Leases*

Immediately prior to the Effective Date, all executory contracts or unexpired leases of the Debtors will be deemed assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code except those executory contracts and unexpired leases that (1) have been rejected by order of the Bankruptcy Court, (2) are the subject of a motion to reject pending on the Effective Date, (3) are identified on a list to be filed with the Bankruptcy Court on or before the Confirmation Date as to be rejected or (4) are rejected pursuant to the terms of the Plan. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to this Article VI shall revest in and be fully enforceable in accordance with its terms by the respective Reorganized Debtor, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or applicable federal law.

Section 6.2. *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be filed with the Bankruptcy Court within thirty days after the date of entry of the Confirmation Order. Any Claims arising from the rejection of an executory contract or unexpired lease for which proofs of claim are not filed within such time will be forever barred from assertion against the Debtors or Reorganized Debtors, their Estates and property unless otherwise ordered by the Bankruptcy Court. All Allowed Claims arising from rejection of executory contracts or unexpired leases for which proofs of claim have been timely filed will be, and will be treated as, Allowed General Unsecured Claims subject to the provisions of Article III hereof, and subject to any limitation on allowance of such Claims under section 502(b) of the Bankruptcy Code or otherwise.

Section 6.3. *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Except as otherwise set forth herein, any monetary amounts by which any executory contract or unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such executory contract or unexpired lease may otherwise agree. In the event of a dispute regarding (1) the amount of any cure payments, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section

365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

Section 6.4. *Indemnification of Directors, Officers and Employees*

The obligations of the Debtors to indemnify any Person serving at any time on or prior to the Effective Date as one of their directors, officers or employees by reason of such Person's service in such capacity, or as a director, officer, partner, trustee, employee or agent of any other corporation, partnership, joint venture, trust or other enterprise, at the Debtors' request, including with respect to employee benefit plans, to the extent provided in the Debtors' constituent documents, by a written agreement with the Debtors or applicable state law, each as applicable, shall be deemed and treated as executory contracts that are assumed by the Debtors pursuant to the Plan and section 365 of the Bankruptcy Code as of the Effective Date. Accordingly, such indemnification obligations shall be treated as General Unsecured Claims and shall survive unimpaired and unaffected by entry of the Confirmation Order, irrespective of whether such indemnification is owed for an act or event occurring before or after the Petition Date, except if such claim or liability is determined pursuant to a Final Order to have resulted from the gross negligence, willful misconduct, fraud or criminal conduct of such indemnified Person. For a period of at least six years following the Effective Date, the Reorganized Debtors shall maintain directors' and officers' liability insurance (covering all of the Debtors' existing and former directors and officers) in an amount and on terms that are no less favorable to such directors and officers than the directors' and officers' liability insurance that was in effect immediately prior to the Petition Date.

Section 6.5. *Compensation and Benefit Programs*

Except as otherwise expressly provided hereunder, all employment and severance policies, and all compensation and benefit plans, policies and programs of the Debtors applicable to their employees, retirees and non-employee directors and the employees and retirees of their subsidiaries, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans and life, accidental death and dismemberment insurance plans, are treated as executory contracts under the Plan and on the Effective Date will be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code; *provided, however,* that no participant in any such plan, policy or program shall be entitled to or receive any increased or accelerated payment of amounts otherwise payable under such plan, policy or program as a result of the commencement of the Chapter 11 Cases or the consummation of the Plan, including the issuance of any shares of Reorganized Oneida Common Stock or defaults arising or resulting from the Chapter 11 Cases, if any.

Section 6.6. *Deferred Compensation Plan*

The transactions contemplated by the Plan shall not constitute a Change of Control (as defined in the Deferred Compensation Plan) and no Deferred Compensation Plan Participant shall be entitled to or receive any increased or accelerated payment of amounts otherwise payable under the Deferred Compensation Plan as a result of the consummation of the Plan, including the issuance of any shares of Reorganized Oneida Common Stock or defaults arising or resulting from the Chapter 11 Cases, if any. The Debtors are not aware of, after having made diligent inquiry, any obligation to pay "retiree benefits" as defined in section 1114(a) of the Bankruptcy Code.

Section 6.7. *Oneida Stock Option/Ownership Plans*

As of the Effective Date, the Oneida Stock Option/Ownership Plans shall be deemed terminated and be of no further force or effect and in accordance with section 3.3(i) hereof, all Oneida Stock Rights shall be canceled, and each Holder thereof shall not be legally entitled to receive or retain any distribution on account of any Oneida Stock Rights under the Plan.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

Section 7.1. *Distribution for Claims Allowed as of the Effective Date*

(a)     Except as otherwise provided in this Article VII or as may be ordered by the Bankruptcy Court, distributions to be made on the Effective Date on account of Claims that are Allowed as of the Effective Date and are entitled to receive distributions under the Plan shall be made on the Effective Date or as soon as practicable thereafter except as otherwise specified herein.  Distributions on account of Claims that become Allowed Claims after the Effective Date shall be made pursuant to Articles II and III hereof.

(b)     For purposes of determining the accrual of interest or rights in respect of any other payment from and after the Effective Date, the Tranche B Common Stock to be issued under the Plan shall be deemed issued as of the Effective Date regardless of the date on which the Tranche B Common Stock is actually dated, authenticated or distributed.

Section 7.2. *Distribution by the Reorganized Debtors*

Reorganized Oneida shall make all initial distributions required under the Plan.

Section 7.3. *Delivery and Distributions and Undeliverable or Unclaimed Distributions*

(a)     *Delivery of Distributions in General.*  Except as otherwise specified in the Plan, including this section 7.3, any distribution to a Holder of an Allowed Claim in accordance with section 3.3 hereof will be made to such Holder of record as of the Distribution Record Date at the address of such Holder as indicated in the records of the Debtors.

(b)     *Undeliverable Distributions.*

(i)     *Holding of Undeliverable Distributions.*  If any Allowed Claim Holder's distribution is returned as undeliverable, no further distributions shall be made to such Holder unless and until the Reorganized Debtors are notified in writing of such Holder's then current address.  Undeliverable distributions shall remain in the possession of the Reorganized Debtors pursuant to this Article VII until such time as a distribution becomes deliverable.  Undeliverable Cash shall not be entitled to any interest, dividends or other accruals of any kind.

(ii)     *After Distributions Become Deliverable.*  Except as otherwise provided herein, within 20 days after the end of each calendar quarter following the Effective Date, the Reorganized Debtors shall make all distributions that become deliverable during the preceding calendar quarter.

(iii)     *Failure to Claim Undeliverable Distributions.*  The Reorganized Debtors will file with the Bankruptcy Court, from time to time, a listing of the Holders of unclaimed distributions.  This list will be maintained until the entry of an order and/or final decree closing the Chapter 11 Cases.  Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable distribution within one year after the Effective Date shall have its Claim for such undeliverable distribution discharged and shall be forever barred from asserting any such Claim against the Reorganized Debtors or their property.

(iv)     *Compliance with Tax Requirements.*  Any federal, state or local withholding taxes or amounts required to be withheld under applicable law shall be deducted from distributions hereunder.  All Entities holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

Section 7.4. *Timing and Calculation of Amounts to Be Distributed*

On or as soon as practicable after the Effective Date (except as otherwise specified in the Plan), each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for such

Allowed Claims in the applicable Class. Beginning on the date that is twenty calendar days after the end of the calendar quarter following the Effective Date and twenty calendar days after the end of each calendar quarter thereafter, distributions shall also be made, pursuant to Section 8.3 below, to Holders of Disputed Claims in any such Class whose Disputed Claims were allowed during the preceding calendar quarter. Such quarterly distributions shall also be in the full amount that the Plan provides for Allowed Claims in the applicable Class.

Section 7.5. *Setoffs and Recoupments*

The Reorganized Debtors may, pursuant to applicable law, set off or recoup against any Allowed Claim (other than Secured Prepetition Lender Claims (which Claims shall not be subject to setoff, recoupment or reduction of any kind, including pursuant to section 502(d) of the Bankruptcy Code)) and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim), the claims, rights and Causes of Action of any nature that the Debtors or Reorganized Debtors may hold against the Holder of such Allowed Claim; *provided*, *however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtors of any such claims, rights and Causes of Action that the Debtors or Reorganized Debtors may possess against such Holder.

Section 7.6. *Surrender of Canceled Oneida Equity Interests*

Holders of the Oneida Equity Interests shall be deemed to have surrendered the certificates or other documents underlying such Oneida Equity Interests and all such certificates or other documentation shall be deemed canceled as of the Effective Date.

Section 7.7. *Fractional Shares of Reorganized Oneida Common Stock*

No fractional shares of Reorganized Oneida Common Stock shall be distributed under the Plan. Each Person entitled to receive Reorganized Oneida Common Stock shall receive the total number of whole shares of Reorganized Oneida Common Stock to which such Person is entitled. Whenever any distribution to a particular Person would otherwise call for distribution of a fraction of a share of Reorganized Oneida Common Stock, Reorganized Oneida shall allocate separately one whole share to such Person in order of the fractional portion of their entitlements, starting with the largest such fractional portion, until all remaining whole shares have been allocated. Upon the allocation of a whole share to a Person in respect of the fractional portion of its entitlement, such fractional portion shall be canceled. If two or more Persons are entitled to equal fractional entitlements and the number of Persons so entitled exceeds the number of whole shares which remain to be allocated, Reorganized Oneida shall allocate the remaining whole shares by random lot or such other impartial method as Reorganized Oneida deems fair. Upon the allocation of all of the whole shares authorized under the Plan, all remaining fractional portions of the entitlements shall be canceled and shall be of no further force and effect.

Section 7.8. *Manner of Payment Under Plan of Reorganization*

At the option of Reorganized Oneida, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

## ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

Section 8.1. *Prosecution of Objections to Claims*

After the Confirmation Date, the Debtors and the Reorganized Debtors shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment objections to any Claims, and may settle or compromise any Disputed Claim without approval of the Bankruptcy Court. All Disputed Claims shall be determined, resolved or adjudicated in the manner in which such Claims would have been determined, resolved or adjudicated if the Chapter 11 Case had not been commenced, unless the Debtors or the Reorganized Debtors, as the case may be, at

their election, choose to determine, resolve or adjudicate in the Bankruptcy Court any Disputed Claims arising during these Chapter 11 Cases.

Unless required by the Bankruptcy Court, Holders of Claims shall not be required to file proofs of claim with the Bankruptcy Court. The Debtors intend to make distributions as required by the Plan and in accordance with the books and records of the Debtors and, with respect to all Disputed Claims, in accordance with the terms of the preceding paragraph.

Section 8.2. *Estimation of Claims*

The Debtors or the Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

Section 8.3. *Payments and Distributions on Disputed Claims*

Notwithstanding any provision in the Plan to the contrary, except as otherwise agreed by the Reorganized Debtors in their sole discretion, no partial payments and no partial distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Subject to the provisions of this Article VIII, as soon as practicable after a Disputed Claim becomes an Allowed Claim, the Holder of such Allowed Claim will receive all payments and distributions to which such Holder is then entitled under the Plan, without payment of interest on such Allowed Claim. Notwithstanding the foregoing, any Entity or Person who holds both an Allowed Claim(s) and a Disputed Claim(s) will receive the appropriate payment or distribution on the Allowed Claim(s), although, except as otherwise agreed by the Reorganized Debtors in their sole discretion, no payment or distribution will be made on the Disputed Claim(s) until such dispute is resolved by settlement or Final Order.

## ARTICLE IX

## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF THE PLAN

Section 9.1. *Conditions Precedent to Confirmation*

It shall be a condition to Confirmation of the Plan that (a) all provisions, terms and conditions of the Plan shall have been approved in the Confirmation Order or waived pursuant to the provisions of Section 9.3 below and (b) the identity of the individuals proposed to serve on the boards of directors of the Reorganized Debtors shall have been disclosed to the Bankruptcy Court.

Section 9.2. *Conditions Precedent to Occurrence of the Effective Date*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Section 9.3 of the Plan:

(a)      the Confirmation Order shall have been approved by the Bankruptcy Court and duly entered on the docket for the Chapter 11 Cases by the Clerk of the Bankruptcy Court, shall not have been modified without the consent of the Debtors, shall not be subject to a pending motion pursuant to section 1144 of the Bankruptcy Code and shall have become a Final Order;

(b)     all Exit Facility Documents necessary to implement the Exit Facility shall have been duly executed and delivered;

(c)     all outstanding obligations of the Debtors under the DIP Credit Agreement shall have been paid in full or otherwise satisfied, and such arrangements shall have been terminated;

(d)     each Holder of a Secured Tranche A Claim shall have been paid the consideration required pursuant to Section 3.3(a) of the Plan;

(e)     the Tranche B Common Stock shall have been issued by Reorganized Oneida for distribution in accordance with the terms hereof;

(f)     the Reorganized Oneida Certificate of Incorporation shall have been filed with the Secretary of State of Delaware and each other Reorganized Debtor shall have filed an amended certificate of incorporation with the appropriate secretary of state of its respective jurisdiction, or may reincorporate in the State of Delaware, in accordance with the terms hereof;

(g)     there shall not be in effect any order, law or regulation staying, restraining, enjoining or otherwise prohibiting or making illegal the consummation of any of the transactions contemplated by the Plan;

(h)     all consents, approvals and actions of, filings with and notices to any governmental or regulatory authority necessary to permit the Reorganized Debtors to perform their obligations under the Plan and to permit the Reorganized Debtors to consummate the transactions contemplated hereby shall have been duly obtained, made or given and shall be in full force and effect, and all terminations or expirations of waiting periods imposed by any governmental or regulatory authority necessary for the consummation of the transactions contemplated by the Plan shall have occurred; and

(i)     all other actions and documents necessary to implement the provisions of the Plan on the Effective Date shall have been, respectively, effected or duly executed and delivered.

Section 9.3. *Waiver of Conditions*

The Debtors may waive, subject to the approval of the Requisite Tranche A Holders and the Requisite Tranche B Holders, any of the conditions precedent to Confirmation of the Plan set forth in Section 9.1 above, and the conditions precedent to occurrence of the Effective Date set forth in Section 9.2(e)-(h) above, at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than a proceeding to confirm and/or consummate the Plan.

Section 9.4. *Effect of Non-Occurrence of Effective Date Conditions*

If the conditions to occurrence of the Effective Date have not been satisfied or waived in accordance with this Article IX on or before the first Business Day that is more than 60 days after the Confirmation Date or by such later date as is approved by the Bankruptcy Court after notice and a hearing, then on motion by the Debtors made, prior to the time that all of the conditions have been satisfied or waived, the Bankruptcy Court may vacate the Confirmation Order and the Confirmation Order shall be of no force and effect.  Notwithstanding the foregoing, the Confirmation Order shall not be vacated if all of the conditions to the occurrence of the Effective Date set forth in this Article IX are either satisfied or waived, in accordance with the terms hereof, prior to entry by the Bankruptcy Court of an order granting the relief requested in such motion.

If the Confirmation Order is vacated, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by or against the Debtors or any Oneida Equity Interest; (2) prejudice in any manner the rights of the Debtors; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors in any respect.

Section 9.5. *Substantial Consummation of Plan*

Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

## ARTICLE X

## RELEASE, INJUNCTIVE AND RELATED PROVISIONS

Section 10.1. *Subordination*

The classification and manner of satisfying all Claims and Interests and the respective distributions and treatments under the Plan take into account or conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan. The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Entities and Persons from enforcing or attempting to enforce any such contractual, legal and equitable subordination rights satisfied, compromised and settled pursuant to this Article X.

Section 10.2. *Releases*

In consideration of the contributions of certain parties to the Chapter 11 Cases and the waivers of Claims, rights and Causes of Action in Section 10.3, including, but not limited to, the waiver by certain parties (or their affiliates) of rights against one or more of the Debtors, the Plan provides for certain waivers, exculpations, releases and injunctions.

(a)     *Releases by Debtors and Reorganized Debtors.* As of the Effective Date, for good and valuable consideration, including, but not limited to, the service of the D&O Releasees, the Prepetition Agent, the Prepetition Lenders, the DIP Agent, the parties to the DIP Credit Agreement, the Committees and each member of the Committees, in their capacity as such, to facilitate the expeditious reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan, the adequacy of which is hereby confirmed, the Debtors and the Reorganized Debtors hereby release:

(i)      all D&O Releasees and their respective officers, directors, partners, members, employees, attorneys, financial advisors, accountants, investment bankers, agents, professionals and representatives, each in such capacity;

(ii)     the Prepetition Agent, all Prepetition Lenders and each of the foregoing Entities' or Persons' respective officers, directors, partners, members, employees, attorneys, financial advisors, accountants, investment bankers, agents, professionals and representatives, each in such capacity;

(iii)    the DIP Agent, all parties to the DIP Credit Agreement and each of the foregoing Entities' or Persons' respective officers, directors, partners, members, employees, attorneys, financial advisors, accountants, investment bankers, agents, professionals and representatives, each in such capacity;

(iv)    the Committees, each member of the Committees, in their capacity as such, and each of the foregoing Entities' or Persons' respective officers, directors, partners, members, employees, attorneys, financial advisors, accountants, investment bankers, agents, professionals and representatives, each in such capacity; and

(v)     the property of each of the foregoing Entities and Persons,

from any and all Claims and from all Causes of Action that the Debtors, the Reorganized Debtors or their respective affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Oneida Equity Interest or other Entity or Person, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date for Claims or liabilities in connection with or related to the Debtors, the Reorganized Debtors, their respective affiliates, the Chapter 11 Cases or the Plan; *provided*, *however*, that there shall be no such release on account of claims or liabilities (x) in respect of any loan, advance or similar payment by the Debtors or their affiliates to any such Entity or Person, or (y) in respect of any contractual obligation owed by such Entity or Person to the Debtors or their affiliates; *provided*, *further*, that the foregoing provisions of this Section 10.2(a) shall have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, fraud or criminal conduct.

(b)     *Releases by and of Holders of Claims.*  On and after the Effective Date, each Holder of a Claim who has voted to accept the Plan and to accept the release set forth in this Section 10.2(b) shall be deemed to have released unconditionally the Debtors, the Reorganized Debtors and their respective affiliates, the D&O Releasees, the Prepetition Agent, all Prepetition Lenders, the DIP Agent, all parties to the DIP Credit Agreement, the Committees, each member of the Committees, in their capacity as such, and each of the foregoing Entities' or Persons' respective officers, directors, employees, partners, members, attorneys, financial advisors, accountants, investment bankers, agents, representatives and professionals, each in such capacity, and the property of each of the foregoing Entities or Persons, from any and all Claims or Causes of Action based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date in any way relating to or pertaining to (i) the Debtors, the Reorganized Debtors or their respective affiliates, (ii) the Chapter 11 Cases and (iii) the negotiation, formulation and preparation of the Plan or the Plan Documents; *provided*, *however*, that the foregoing provisions of this Section 10.2(b) shall have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, fraud or criminal conduct.

Section 10.3. *Preservation of Rights of Action*

Except as otherwise provided in the Plan or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may exclusively enforce any Claims, rights and Causes of Action that the Debtors or Estates may hold against any Person or Entity.  The Reorganized Debtors may pursue such retained Claims, rights or Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. On the Effective Date, the Reorganized Debtors shall be deemed to waive and release any Claims, rights or Causes of Action arising under sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or otherwise arising under the Bankruptcy Code, held by the Reorganized Debtors against any Person or Entity, except for any such action which may be pending as of the Voting Deadline as to which the Reorganized Debtors' rights shall not be waived and released, and the Reorganized Debtors shall retain and may prosecute any such action.

Section 10.4. *Exculpation*

The Debtors, the Reorganized Debtors, each of their respective affiliates, the D&O Releasees, the Prepetition Agent, all Prepetition Lenders, the DIP Agent, all parties to the DIP Credit Agreement, the Committees, each member of the Committees, in their capacity as such, and each of the foregoing Entities' or Persons' respective members, partners, officers, directors, employees and agents (including any attorneys, accountants, financial advisors, investment bankers and other representatives or professionals retained by such Entities or Persons), and the property of each of the foregoing Entities or Persons, shall have no liability to any Entity or Person, whether arising under contract, tort, federal or state securities laws, whether known or unknown, foreseen or unforeseen, existing or arising in the future, for any pre-petition or post-petition act or omission in connection with, or arising out of, the Disclosure Statement, the Plan or any Plan Document, including any Bankruptcy Court orders related thereto, the solicitation of votes for and the pursuit of Confirmation of this Plan, the Effective Date of this Plan, or the administration of this Plan or the property to be distributed under this Plan and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan; *provided*, *however*, that the foregoing provisions of this Section 10.4 shall have no effect on the liability of any Entity or Person that results from any such act or omission that is determined in a Final Order to have constituted gross negligence,

willful misconduct, fraud or criminal conduct (the acts or omissions entitled to exculpation pursuant to this Section 10.4, the "Exculpated Acts").

The Reorganized Debtors shall, from and after the Effective Date, indemnify, hold harmless and reimburse (on an as-incurred basis) each of the D&O Releasees, the Prepetition Agent, all Prepetition Lenders, the DIP Agent, all parties to the DIP Credit Agreement, the Committees, each member of the Committees, in their capacity as such, and each of the foregoing Entities' or Persons' members, partners, officers, directors, employees and agents (including any attorneys, accountants, financial advisors, investment bankers and other representatives or professionals retained by such Entities or Persons) (collectively, the foregoing Entities and Persons are the "Indemnified Parties"), and the property of each of the Indemnified Parties, from, against and for any and all losses, claims (as defined in section 101(5) of the Bankruptcy Code), damages, liabilities, costs and/or expenses (together, the "Damages") arising from, related to or that are in any manner connected with any Exculpated Act, including without limitation, any Damages arising or resulting from or that are in any manner connected with (i) any Cause of Action, suit, investigation or any other proceeding and (ii) the defense of any Indemnified Party (or the involvement or participation of any Indemnified Party) in any Cause of Action, suit, investigation or any other proceeding.

Section 10.5. *Injunction*

Except as otherwise provided herein or the Confirmation Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code, the Confirmation Order shall provide that, on and after the Effective Date, all persons who have held, currently hold or may hold a Claim against the Debtors or an Equity Interest (whether directly or indirectly and whether as a beneficial holder of such Claim or Equity Interest or as a holder of record of such Claim or Equity Interest or otherwise) that is discharged under the Plan are permanently enjoined, on and after the Confirmation Date and subject to the occurrence of the Effective Date, from taking any of the following actions on account of any such Claim or Equity Interest: (a) commencing or continuing in any manner (including by directly or indirectly assisting or facilitating the commencement or continuation of) any action or other proceeding of any kind with respect to any such Claim or Equity Interest, against the Debtors, the Reorganized Debtors or their respective properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, the Reorganized Debtors or their respective properties on account of any such Claim or Equity Interest; (c) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtors, the Reorganized Debtors, or their respective properties or interests in their respective properties on account of any such Claim or Equity Interest; (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due from the Debtors, the Reorganized Debtors, or against the properties or interests in property of the Debtors or the Reorganized Debtors on account of any such Claim or Equity Interest; (e) authenticating, delivering or facilitating the delivery of any certificate; and (f) commencing, continuing or in any manner taking part or participating in any action, proceeding or event (whether directly or indirectly) that would be in contravention of the terms, conditions and intent of the Plan, including the releases and exculpations provided in Sections 10.2 and 10.4 of the Plan. For purposes of clarity, all Disputed Claims shall be determined, resolved or adjudicated in accordance with the terms of Section 8.1 hereto. The foregoing injunction will extend to the benefit of the successors of the Debtors (including, without limitation, the Reorganized Debtors) and the Entities and Persons entitled to the benefit of the releases and exculpations provided in Sections 10.2 and 10.4 of the Plan, and their respective properties and interests in property. Any person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms, or as provided in the Bankruptcy Code.

## ARTICLE XI

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, subject to the terms of Section 8.1 hereto, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Plan, the Confirmation Order and the Chapter 11 Cases to the fullest extent permitted by law, including, without limitation, jurisdiction to:

(a)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Oneida Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Oneida Equity Interests;

(b)     Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(c)     Resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtors are party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

(d)     Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan, including ruling on any motion filed pursuant to Article VIII;

(e)     Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(f)     Enter such orders and take other actions as may be necessary or appropriate to implement or consummate the provisions of the Plan and the Confirmation Order, including, but not limited to, modification or amendment thereof pursuant to Section 12.4 of the Plan, and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan or the Disclosure Statement;

(g)     Resolve any cases, controversies, suits or disputes that may arise in connection with the interpretation or enforcement of the Plan or any Entity's or Person's obligations incurred in connection with the Plan;

(h)     Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity or Person with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided herein;

(i)     Resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article X and enter such orders as may be necessary or appropriate to implement such releases, injunction and other provisions;

(j)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(k)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Disclosure Statement;

(l)     Enter an order or final decree concluding the Chapter 11 Cases;

(m)     Resolve any disputes concerning whether an Entity or Person had sufficient notice of the Chapter 11 Cases, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the Confirmation of this Plan for the purpose of determining whether a Claim or Oneida Equity Interest is discharged hereunder or for any other purpose;

(n)     Recover all assets of the Debtors and property of the Estate, wherever located;

(o)     Hear and resolve all matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(p)     Hear and resolve all matters involving the nature, existence or scope of the Debtors' discharge;

(q)     Effectuate performance of or payment of all obligations under the Plan; and

(r)     Hear and resolve all matters involving modification of the Plan under section 1127 of the Bankruptcy Code.

# ARTICLE XII

## MISCELLANEOUS PROVISIONS

Section 12.1. *Dissolution of Committees*

On the Effective Date, the Committees shall dissolve and their members shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases, except with respect to fee applications, any expense reimbursements of such committees, and pending appeals relating to these Chapter 11 Cases.

Section 12.2. *Payment of Statutory Fees*

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date.

Section 12.3. *Discharge of Debtors*

Except as otherwise provided herein or in the Confirmation Order, pursuant to section 1141(d) of the Bankruptcy Code, (1) the rights afforded in the Plan, and the treatment of all Claims and Oneida Equity Interests therein, shall be in exchange for and in complete satisfaction, discharge and release of Claims and Oneida Equity Interests of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred on such Claims from and after the Petition Date, against the Debtors, the Reorganized Debtors, or any of their Estates, assets or properties, (2) on the Effective Date, all such Claims against, and Oneida Equity Interests in, the Debtors shall be satisfied, discharged and released in full and (3) all Entities and Persons shall be precluded from asserting against the Reorganized Debtors, their successors or their assets or properties any other or further Claims or Oneida Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.  For purposes of clarity, all Disputed Claims shall be determined, resolved or adjudicated in accordance with the terms of Section 8.1 hereto.

Section 12.4. *Modification of Plan*

The Debtors reserve the right to alter, amend or modify the Plan prior to the entry of the Confirmation Order.  After the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as the case may be, may, upon order of the Bankruptcy Court, subject, in the event that the Tranche A Holders have not received the Tranche A Distribution, to the consent of the Requisite Tranche A Holders and, in the event that the Tranche B Holders have not received the Tranche B Distribution, to the consent of the Requisite Tranche B Holders, to amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

Except as provided in the preceding paragraph, a Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended, modified or clarified in accordance with this Article XII, unless the proposed alteration, amendment, modification or clarification adversely changes the treatment of the Claim of such Holder.

Section 12.5. *Revocation of Plan*

The Debtors reserve the right to revoke and withdraw the Plan at any time prior to the Confirmation Date. If the Plan is so revoked or withdrawn, or if the Effective Date does not occur, then the Plan shall be deemed null and void, and of no force or effect.

Section 12.6. *Successors and Assigns*

The rights, benefits and obligations of any Entity or Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity or Person.

Section 12.7. *Reservation of Rights*

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of this Plan, any statement or provision contained herein or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors with respect to Holders of Claims or Oneida Equity Interests prior to the Effective Date.

Section 12.8. *Section 1145 Exemption*

Pursuant to section 1145(a) of the Bankruptcy Code, the offer, issuance, transfer or exchange of any security under the Plan, or the making or delivery of an offering memorandum or other instrument of offer or transfer under this Plan, shall be exempt from section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer or a security. All shares of Reorganized Oneida Common Stock issued under the Plan and covered by section 1145(a)(1) of the Bankruptcy Code may be resold by holders thereof without registration, unless the holder is an "underwriter" (as defined in section 1145(b)(1) of the Bankruptcy Code) with respect to such securities.

Section 12.9. *Headings*

Headings utilized in the Plan are for the convenience of reference only and shall not constitute a part of the Plan for any other purpose.

Section 12.10. *Governing Law*

Except to the extent that the Bankruptcy Code or other federal law is applicable, the Plan shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the principles of conflict of laws thereof that would require application of the law of another jurisdiction.

Section 12.11. *Severability*

If, prior to entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Section 12.12. *Implementation*

The Debtors shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in this Plan.

Section 12.13. *Inconsistency*

In the event of any inconsistency among the Plan, the Disclosure Statement, the Plan Documents, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

Section 12.14. *Further Assurances*

The Debtors, the Reorganized Debtors and all Holders of Claims and Oneida Equity Interests receiving distributions under the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

Section 12.15. *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be sent by first class U.S. mail, postage prepaid, to:

> Oneida Ltd.
> 163-181 Kenwood Avenue
> Oneida, NY 13421
> Attn: General Counsel
>
> with copies to:
>
> Shearman & Sterling LLP
> 599 Lexington Avenue
> New York, NY 10022
> Attn: Douglas P. Bartner, Esq.,
>      Michael H. Torkin, Esq.

Section 12.16. *Exemption from Certain Transfer Taxes*

Pursuant to section 1146 of the Bankruptcy Code: (a) the issuance, transfer or exchange of any securities, instruments or documents; (b) the creation of any other Lien; (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated in the Plan; and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

Section 12.17. *Compromise of Controversies*

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that

such compromises and settlements are in the best interests of the Debtors, the Reorganized Debtors, the Estates and any Entity holding Claims against the Debtors.

Section 12.18. *No Admissions*

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by an Entity with respect to any matter set forth herein.

Section 12.19. *Filing of Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

Section 12.20. *Allocation of Payments*

To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted, be allocated for income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

[signatures on following page]

Respectfully submitted,

Dated as of July 7, 2006

SAKURA, INC.

By:   /s/ James P. Mylonas
     James P. Mylonas
     President


ONEIDA LTD.

By:   /s/ James E. Joseph
     James E. Joseph
     President


BUFFALO CHINA, INC.

By:   /s/ Catherine H. Suttmeier
     Catherine H. Suttmeier
     Vice President


DELCO INTERNATIONAL, LTD.

By:   /s/ James E. Joseph
     James E. Joseph
     President


KENWOOD SILVER COMPANY, INC.

By:   /s/ James E. Joseph
     James E. Joseph
     President and Chief Executive Officer


ONEIDA FOOD SERVICE, INC.

By:   /s/ James E. Joseph
     James E. Joseph
     President

ONEIDA INTERNATIONAL INC.

By:  /s/ James E. Joseph
     James E. Joseph
     President

ONEIDA SILVERSMITHS INC.

By:  /s/ James E. Joseph
     James E. Joseph
     President

THC SYSTEMS, INC.

By:  /s/ James E. Joseph
     James E. Joseph
     President