CREDIT SUISSE SECURITIES (USA) LLC
Eleven Madison Avenue
New York, New York 10010
Telephone: (212) 325-2000
Facsimile: (212) 325-6665
Philippe Jacob, Managing Director
Syed Ali Raza Mehdi, Director

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:

ONEIDA LTD., et al.,

　　　　　　　　　　　Debtors.

:
:
:
:
:
:
:
:
:
:
:
:
:

Chapter 11

Case No. 06 – 10489 (ALG)

(Jointly Administered)

-------------------------------------------------------------x

**SUMMARY SHEET PURSUANT TO UNITED STATES**
**TRUSTEE GUIDELINES FOR REVIEWING APPLICATIONS**
**FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES**

**FIRST AND FINAL APPLICATION**

NAME OF APPLICANT:　　　　Credit Suisse Securities (USA) LLC

ROLE IN THE CASE:　　　　　Financial Advisor to the Debtors

TIME PERIOD:　　　　　　　March 19, 2006 through and including August 29, 2006

APPLICATION:　　　　　　　Total Fees Requested: $1,450,000.00
　　　　　　　　　　　　　Total Expenses Requested: $216,536.58 (including fees
　　　　　　　　　　　　　and expenses incurred by Weil, Gotshal & Manges LLP,
　　　　　　　　　　　　　counsel to Credit Suisse Securities (USA) LLC, in the
　　　　　　　　　　　　　aggregate amount of $208,829.79, comprised of fees and
　　　　　　　　　　　　　expenses incurred during the Compensation Period, in the
　　　　　　　　　　　　　amount of $173,789.03, and fees and expenses incurred prior
　　　　　　　　　　　　　to the Compensation Period, in the amount of $35,040.76)

PRIOR APPLICATIONS:　　　　N/A

CREDIT SUISSE SECURITIES (USA) LLC
Eleven Madison Avenue
New York, New York  10010
Telephone:  (212) 325-2000
Facsimile:  (212) 325-6665
Philippe Jacob, Managing Director
Syed Ali Raza Mehdi, Director

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                                             :
                                                             :
                                                             :
In re:                                                       :        Chapter 11
                                                             :
ONEIDA LTD., et al.,                                         :        Case No. 06 – 10489 (ALG)
                                                             :
                            Debtors.                         :        (Jointly Administered)
                                                             :
                                                             :
                                                             :
-------------------------------------------------------------x
```

**FIRST AND FINAL APPLICATION OF**
**CREDIT SUISSE SECURITIES (USA) LLC, AS FINANCIAL**
**ADVISOR TO THE DEBTORS, FOR FINAL ALLOWANCE OF**
**COMPENSATION FOR PROFESSIONAL SERVICES RENDERED**
**AND REIMBURSEMENT OF ACTUAL AND NECESSARY**
**EXPENSES INCURRED FROM MARCH 19, 2006 THROUGH AUGUST 29, 2006**

TO THE HONORABLE ALLAN L. GROPPER,
UNITED STATES BANKRUPTCY JUDGE:

Credit Suisse Securities (USA) LLC ("Credit Suisse"), as financial advisor

for Oneida Ltd. ("Oneida") and certain of its direct and indirect domestic subsidiaries, as

debtors and debtors in possession in the above-captioned cases (collectively, the

"Debtors"),[1] hereby submits its first and final application (the "Application"), pursuant to

---

[1] In addition to Oneida Ltd., the following entities were debtors in these related cases:  Sakura,
Inc.; Buffalo China, Inc.; Delco International, Ltd.; Kenwood Silver Company, Inc.; Oneida Food
Service, Inc.; Oneida International Inc.; Oneida Silversmiths Inc.; and THC Systems, Inc.

sections 328(a) and 330(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the final allowance of compensation for professional services performed by Credit Suisse for the period commencing March 19, 2006 through and including August 29, 2006 (the "Compensation Period"), and reimbursement of the actual and necessary expenses incurred during the Compensation Period (including fees and expenses incurred by its legal counsel, Weil, Gotshal & Manges LLP, both prior to and during the Compensation Period), respectfully represents:

## **BACKGROUND**

1.      On March 19, 2006 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of the Bankruptcy Code.

2.      By order dated March 20, 2006, the Debtors' chapter 11 cases were consolidated for administrative purposes only, and pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors in possession.

3.      On April 10, 2006, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors and on May 18, 2006, appointed an official committee of equity security holders (the "Equity Committee").  No trustee or examiner has been appointed in these chapter 11 cases.

4.      On the Petition Date, the Debtors filed, among other things, (i) their proposed Joint Pre-negotiated Plan of Reorganization Under Chapter 11 of the

Bankruptcy Code (as may be amended from time to time, the "Plan") and (ii) a disclosure statement with respect to the Plan (as amended, the "Disclosure Statement").

5.      On August 30, 2006, this Court entered an order confirming the Plan.

## RETENTION OF CREDIT SUISSE

6.      On March 19, 2006, the Debtors filed an application, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, for authorization to employ and retain Credit Suisse as their financial advisor (the "Retention Application").

7.      By Order dated March 22, 2006, this Court authorized the retention and employment of Credit Suisse on an interim basis. On May 2, 2006, the Court being satisfied that (i) Credit Suisse does not hold or represent an interest adverse to the Debtors or their estates, (ii) Credit Suisse is a "disinterested person" as that term is defined under section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and (iii) the employment of Credit Suisse is necessary and in the best interests of the Debtors, their creditors and estates, entered a final order pursuant to section 328(a) of the Bankruptcy Code authorizing the retention and employment of Credit Suisse (the "Final Retention Order").

8.      As set forth more fully in the Retention Application, Credit Suisse has substantial expertise in advising troubled companies in connection with in- and out-of-court recapitalizations and is experienced in debt restructuring, valuation, and related issues. Moreover, Credit Suisse provided professional services to the Debtors since August 2005 in connection with their recapitalization efforts. The Final Retention Order authorized employment of Credit Suisse pursuant to that certain letter agreement (as

subsequently amended, the "Engagement Letter") dated as of December 7, 2005, which set forth the reasonable terms and conditions of Credit Suisse's employment.

9.     Pursuant to the Engagement Letter, the Debtors agreed to reimburse Credit Suisse for the reasonable fees and expenses of its legal counsel resulting from or arising out of the engagement.  The Final Retention Order authorized Credit Suisse to seek reimbursement for its attorneys' fees from the Debtors pursuant to the Engagement Letter, provided, that the attorneys' invoices and supporting time records are included in the Application and that such invoices and time records are subject to the U.S. Trustee's guidelines for compensation and reimbursement of expenses and the approval of this Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

### SUMMARY OF PROFESSIONAL COMPENSATION
### AND REIMBURSEMENT OF EXPENSES REQUESTED

10.     Except as otherwise specifically described in this Application, this Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases, adopted by the Court on April 19, 1995 (the "Local Guidelines"), the United States Trustee Guidelines for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines," and together with the Local Guidelines, the "Guidelines").  Pursuant to the Local Guidelines, a certification regarding compliance with same is annexed hereto as Exhibit "A."

11.     Because there is no order authorizing the interim compensation of professionals in these chapter 11 cases, no payments have been made to date by the Debtors to Credit Suisse on account of professional services performed or expenses incurred during the Compensation Period.  Accordingly, prior to this Application, Credit Suisse has not filed any previous requests with this Court for interim allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred.

12.     By this Application, Credit Suisse seeks (i) allowance of compensation for professional services rendered to the Debtors during the Compensation Period in the aggregate amount of $1,450,000, which is comprised of unpaid monthly Financial Advisory Fees and a Restructuring Transaction Fee (each as defined below and in the Engagement Letter) in accordance with the Engagement Letter; and (ii) reimbursement of expenses incurred in connection with the rendition of such services in the aggregate amount of $216,536.58, comprised of (a) expenses incurred by Credit Suisse in the amount of $7,706.79; and (b) the fees and expenses of Credit Suisse's attorneys, Weil, Gotshal & Manges LLP ("WGM") in the aggregate amount of $208,829.79.  Specifically, WGM incurred (i) fees in the aggregate amount of $203,966.50, of which $35,024.50 was incurred prior to the Petition Date and $168,942.00 was incurred during the Compensation Period; and (ii) expenses in the aggregate amount of $4,863.29, of which $16.26 was incurred prior to the Petition Date and $4,847.03 was incurred during the Compensation Period.  Credit Suisse requests that the Debtors be authorized to pay Credit Suisse the aggregate amount of fees and expenses

incurred by WGM both prior to and during the Compensation Period in accordance with the terms of the Engagement Letter and Final Retention Order.

13.    During the Compensation Period, Credit Suisse and its attorneys, WGM, expended a total of 785.5 and 342.4 hours, respectively, for which compensation is sought.  In addition, WGM expended a total of 77.6 hours prior to the Compensation Period for which compensation is sought pursuant to the terms of the Engagement Letter and Final Retention Order.

14.    Pursuant to Bankruptcy Rule 2016, Credit Suisse states that, other than fees and expenses incurred by Credit Suisse and paid by the Debtors prior to the Petition Date, as described herein, no payments have heretofore been made or promised to Credit Suisse for services performed or to be performed in any capacity in connection with these chapter 11 cases, other than as set forth in this Application and in the Retention Application.

15.    Pursuant to the UST Guidelines, annexed hereto as Exhibit "B" is a schedule setting forth all Credit Suisse professionals who have performed services in these chapter 11 cases during the Compensation Period, the capacity in which each such individual is employed by Credit Suisse, and the aggregate number of hours expended in this matter.  Annexed hereto as Exhibit "C" is a calculation of the fees requested herein in accordance with the terms of the Engagement Letter.  Annexed hereto as Exhibit "D" is a schedule specifying the categories of expenses for which Credit Suisse is seeking reimbursement and the total amount for each such category (excluding the fees and expenses incurred by WGM).

16.     Pursuant to the UST Guidelines, annexed hereto as Exhibit "E" is a schedule setting forth all WGM professionals and paraprofessionals who have performed services in connection with these chapter 11 cases, both prior to the Petition Date and during the Compensation Period, on behalf of and at the request of Credit Suisse, the capacity in which each such individual is employed by WGM, the department in which each such individual practices, the year in which each such professional was first licensed to practice law, the hourly billing rate(s) charged by WGM for services performed by each such individual, and the aggregate number of hours expended in this matter and fees billed therefor.  Annexed hereto as Exhibit "F" is a schedule specifying the categories of expenses incurred by WGM, for which Credit Suisse is seeking reimbursement, and the total amount for each such category.

17.     The fees charged by WGM in these cases were billed in accordance with its existing billing rates and procedures in effect during the relevant billing periods.  The rates WGM charged for the services rendered by its professionals and paraprofessionals in these chapter 11 cases are the same rates WGM charges for professional and paraprofessional services rendered in comparable nonbankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable nonbankruptcy cases in a competitive national legal market.

18.     WGM maintains computerized records of the time spent by all professionals and paraprofessionals in connection with its representation of Credit Suisse. Consistent with its ordinary practice and the practice of financial advisors in other chapter 11 cases whose fee arrangements are typically not hours-based, Credit Suisse

does not maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals. However, in accordance with the Final Retention Order, Credit Suisse maintained contemporaneous time records for services rendered postpetition, in half-hour increments. Copies of Credit Suisse's and WGM's time records will be furnished to the Court, the attorneys for the Creditors' Committee, the attorneys for the Equity Committee, and the U.S. Trustee (in the case of WGM, subject to redaction for the attorney-client privilege where necessary to protect Credit Suisse), in the format specified by the UST Guidelines.

19. To the extent time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period but were not processed prior to the preparation of this Application, Credit Suisse reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## CALCULATION OF CREDIT SUISSE'S FEES

20. In accordance with the Engagement Letter, approval of compensation paid to Credit Suisse for services performed includes a monthly financial advisory fee (the "Financial Advisory Fee"). During the Compensation Period, the Debtors were required to pay Credit Suisse a Financial Advisory Fee of $150,000 per month. The Debtors are entitled to credit (the "Credit") 50% of the Financial Advisory Fee payments (to the extent not previously credited against another fee paid to Credit Suisse) against the Restructuring Transaction Fee (defined below).

21. In addition to the Financial Advisory Fee, the Engagement Letter provides that the Debtors shall pay Credit Suisse, upon consummation of the first

Transaction (as defined in the Engagement Letter) consummated after the Engagement Letter Date (as defined in the Engagement Letter): (a) a fee (the "Restructuring Transaction Fee") of $2 million if such Transaction is a Restructuring Transaction; or (b) a fee equal to the greater of (x) $2 million; and (y) 1.25% of the Aggregate Value (as defined in the Engagement Letter) if such Transaction is a Sale Transaction (as defined in the Engagement Letter). Furthermore, the Engagement Letter provides that in connection with any potential Transaction that involves the solicitation of consents, waivers, acceptances, authorization, approvals, or other indicia of support (collectively, the "Approvals"), which Approvals are sufficient in the good faith judgment of the Debtors to commence a bankruptcy case under chapter 11 of the Bankruptcy Code in order to implement and consummate such Transaction through a prepackaged or prenegotiated plan of reorganization (a "Prepack Plan"), 50% of the Restructuring Transaction Fee or the Sale Transaction Fee (as defined in the Engagement Letter), as applicable (the "Initial Payment"), shall be payable prior to the commencement of such bankruptcy case and the remaining unpaid portion of the applicable fee shall be payable upon consummation of the Prepack Plan (the "Final Payment"), and the Credit shall be applied first against the Initial Payment and thereafter, if applicable, against the Final Payment.

22. As discussed in the Retention Application, pursuant to the Engagement Letter, prior to the Petition Date, the Debtors paid Credit Suisse $1,452,181.20 which is comprised of:

(i) Financial Advisory Fees in the amount of $825,000;

(ii) The Initial Payment (which represents 50% of the Restructuring Fee less 50% of the Financial Advisory Fees incurred to date), in the amount of $587,500; and

(iii)     Expenses in the amount of $39,681.20.

23.     As described above, Credit Suisse seeks approval of compensation

for services rendered in the aggregate amount of $1,450,000 which is comprised of:

(i)      Financial Advisory Fees in the amount of $900,000 (comprised of
         a Financial Advisory Fee in the amount of $150,000 for each
         month during the Compensation Period);[2] and

(ii)     The Final Payment (which represents 50% of the Restructuring Fee
         less 50% of the Financial Advisory Fees incurred during the
         Compensation Period), in the amount of $550,000.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED
## BY CREDIT SUISSE DURING THE COMPENSATION PERIOD

24.     As noted above, Credit Suisse has provided services to the Debtors

since August 2005 in connection with their recapitalization efforts.  In providing such

services, Credit Suisse worked closely with the Debtors' management and other

professionals and became well acquainted with the Debtors' businesses, capital structure,

financial affairs, and related matters.  In addition, prior to the Petition Date, Credit Suisse

was integrally involved with and assisted the Debtors in negotiating a consensual

restructuring of their indebtedness with their prepetition lenders.  These negotiations

resulted in a plan support agreement with certain of the Debtors' prepetition lenders.

25.     During the Compensation Period, in accordance with the

description of services to be rendered in the Engagement Letter, Credit Suisse performed

services that were substantial, necessary, and beneficial to all parties in interest in these

chapter 11 cases.  The following is a summary of the significant professional services

---

[2] As set forth on Exhibit "C" hereto, the Financial Advisory Fees for which Credit Suisse seeks
payment are calculated based on the following monthly periods:  March 16 – April 15, 2006;
April 16 – May 15, 2006; June 16 – July 15, 2006; July 16 – August 15, 2006; and August 16 –
September 15, 2006.

rendered by Credit Suisse during the Compensation Period. This summary is not intended to be a comprehensive, all-inclusive description of the services performed. Rather, it is intended to highlight certain of those areas in which significant services were performed for the benefit of the Debtors, as well as to identify some of the issues that Credit Suisse was required to address.

26.     In summary, Credit Suisse has provided financial advisory services to the Debtors, including:

(i)     <u>Restructuring Alternatives</u>.  Beginning in August 2005, Credit Suisse has worked closely with the Debtors to assist them in generating, developing, and evaluating their restructuring alternatives.  During the Compensation Period, Credit Suisse's professionals, at the Debtors' request, attended frequent in-person and telephonic meetings with the Debtors' management and the members of the Debtors' board of directors to discuss time-sensitive operational and financial issues relating to the Debtors' businesses and these chapter 11 cases.  Credit Suisse provided advice with respect to a number of business and financial issues. These meetings provided a forum for members of management, the board of directors, Debtors' counsel, and Credit Suisse to exchange ideas, raise questions, and solicit the advice of Credit Suisse and the Debtors' other advisors.

During the chapter 11 cases, Credit Suisse, at the Debtors' request, analyzed D.E. Shaw Laminar Portfolios LLC's and Xerion Capital Partners LLC's offers to purchase the Debtors' assets and valued the consideration offered in connection therewith.

(ii)    <u>Attendance and Preparation for Court Hearings</u>.  Credit Suisse, at the Debtors' request, prepared for and attended Court hearings relating to, among other things, the approval of the Debtors' first-day pleadings, appointment of the Equity Committee, termination of the Oneida Pension Plans, approval of the Disclosure Statement, and confirmation of the Plan.

(iii)   <u>Pension Issues</u>.  On the Petition Date, the Debtors filed with the Court a motion for an order (i) determining that the Debtors satisfy the financial requirements, as set forth in ERISA, for distress termination of the Oneida Pension Plans; and (ii) approving termination of the Oneida Pension Plans (the "Pension Termination

Motion"). Credit Suisse analyzed the Debtors' liabilities in connection with the Oneida Pension Plans and assisted the Debtors in determining that termination of the Oneida Pension Plans was an essential prerequisite to their financial restructuring. Prior to the Petition Date, Credit Suisse met with the Pension Benefit Guaranty Corporation (the "PBGC") to discuss and negotiate termination of the Oneida Pension Plans. Credit Suisse filed a declaration in support of the Pension Termination Motion and prepared for and attended the hearing to consider the Pension Termination Motion.

(iv) <u>Debtor in Possession and Exit Financing</u>. Credit Suisse, at the Debtors' request, assisted the Debtors in obtaining debtor in possession financing in connection with these chapter 11 cases. Credit Suisse surveyed various sources of debtor in possession financing from a number of financial institutions and negotiated the terms of such financing. Credit Suisse also assisted the Debtors in determining that the financing offered by JPMorgan Chase Bank, N.A., as administrative and collateral agent for itself and a syndicate of financial institutions, was the best available option. In addition, Credit Suisse assisted the Debtors to obtain post-bankruptcy financing, as set forth in the Report on Proposed Retention of Credit Suisse as Financial Advisors to the Debtors prepared by Togut, Segal & Segal LLP, conflicts counsel for the Debtors.

(v) <u>Appointment of the Equity Committee</u>. Credit Suisse filed a declaration in connection with the Debtors' objection [Docket No. 194] to the motion, dated April 14, 2006, by an ad hoc committee of equity security holders (the "Ad Hoc Committee") for an order compelling the U.S. Trustee to appoint an official committee of equity security holders (the "Equity Committee Motion") [Docket No. 144].

(vi) <u>Challenges to Credit Suisse's Retention</u>. Shortly after the Petition Date, the Ad Hoc Committee filed an objection to the retention of Credit Suisse as financial advisors to the Debtors (the "Ad Hoc Committee Objection"). In response, the Debtors filed a motion to strike the Ad Hoc Committee's objection [Docket No. 100]. Credit Suisse worked with the Debtors to respond and oppose the Ad Hoc Committee Objection.

After the appointment of the Equity Committee, Credit Suisse worked with the Debtors to respond to the Equity Committee's document requests relating to, among other things, Credit Suisse's valuation analysis and issues relating to their retention. Credit Suisse, with the assistance of counsel, also prepared a

memorandum to Togut, Segal & Segal LLP, conflicts counsel to the Debtors, in response to the issues raised by the Ad Hoc Committee and the U.S. Trustee related to the retention of Credit Suisse as financial advisor to the Debtors.

(vii)  Valuation Issues.  In conjunction with the Debtors' formulation of the Plan, Credit Suisse prepared a valuation of the Debtors' operations.  In connection therewith, Credit Suisse presented the valuation analysis to the Credit Suisse Investment Banking Advisory Committee.  The methodologies upon which Credit Suisse relied in preparing its valuation analysis and a copy of the valuation analysis are set forth in the Declaration of Syed Ali Raza Mehdi (the "Mehdi Declaration") filed in connection with the Debtors' objection to the Equity Committee Motion.

Credit Suisse also analyzed the valuation analysis prepared by Imperial Capital, LLC ("Imperial Capital"), financial advisor to the Equity Committee, and prepared and described a critique of Imperial Capital's valuation analysis in the Mehdi Declaration.

In conjunction with the Debtors' and the Equity Committee's dispute regarding the appropriate valuation of the Debtors' businesses, Credit Suisse, at the Debtors' request, assisted the Debtors in designing and valuing various settlement alternatives.

In response to the Equity Committee's document requests relating to, among other things, Credit Suisse's valuation analysis, Credit Suisse, through its counsel, produced numerous documents.  In addition, Syed Ali Raza Mehdi of Credit Suisse prepared for and was deposed by the Equity Committee in connection with Credit Suisse's valuation analysis.

Finally, Credit Suisse prepared for and attended the hearing to consider confirmation of the Plan and provided testimony in support of its valuation analysis.

27.  The foregoing professional services performed by Credit Suisse were necessary and appropriate to the administration of the Debtors' chapter 11 cases and were in the best interests of the Debtors and other parties in interest.  Compensation for the foregoing services is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED BY WGM

28.     At Credit Suisse's request, WGM rendered professional services to assist Credit Suisse with various critical issues faced by Credit Suisse in these chapter 11 cases.  The following is a summary of the significant professional services rendered by WGM.  The services provided by WGM both before and during the Compensation Period included, among other things:  (i) working with Debtors' counsel to prepare Credit Suisse's Retention Application and the Declaration of Philippe Jacob filed in support thereof; (ii) representing Credit Suisse in connection with its retention by the Debtors at the "first-day" hearing and at subsequent hearings to consider Credit Suisse's retention; (iii) researching issues relating to Credit Suisse's disinterestedness and assisting the Debtors prepare a response to the objection of the Ad Hoc Committee to the Retention Application; (iv) cooperating and assisting Togut, Segal & Segal LLP, Debtors' conflicts counsel, in its preparation of a Report of Proposed Retention of Credit Suisse [Docket No. 181] and preparing a memorandum to Togut, Segal & Segal LLP, in response to the issues raised by the Ad Hoc Committee and the U.S. Trustee related to the retention of Credit Suisse as financial advisors to the Debtors; (v) conferring with the Creditors' Committee regarding its assessment of the issues raised by the Ad Hoc Committee related to the retention of Credit Suisse as financial advisors to the Debtors and responding to numerous informal requests for information by the Creditors' Committee; (vi) participating in discovery in response to the Equity Committee's document requests and relating to Credit Suisse's (a) retention and specifically, the Ad Hoc Committee's allegations that Credit Suisse is not disinterested, and (b) valuation analysis of the Debtors' businesses; (vii) addressing discovery issues relating to Credit Suisse's

proprietary information with Credit Suisse; (viii) preparing for and attending depositions of Syed Ali Raza Mehdi, of Credit Suisse, relating to Credit Suisse's valuation analysis; (ix) reviewing drafts of the Equity Committee's expert valuation reports and discussing the same with Credit Suisse; (x) reviewing and commenting on the Mehdi Declaration in connection with the Debtors' objection to the Equity Committee Motion; (xi) preparing for and attending the hearing to consider confirmation of the Plan and reviewing Syed Ali Raza Mehdi's testimony in connection with the same.

29.     The professional services rendered by WGM to Credit Suisse were necessary to facilitate Credit Suisse's provision of services to the Debtors.  Compensation for the foregoing services is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved and the professional services were performed expeditiously and efficiently.

30.     The professional services performed by WGM on behalf of Credit Suisse both prior to and during the Compensation Period required an aggregate expenditure of 420 recorded hours by WGM's members, counsel, associates, and paraprofessionals.  Of the aggregate time expended, 126 recorded hours were expended by partners and counsel of WGM, 269 recorded hours were expended by associates, and 25 recorded hours were expended by paraprofessionals of WGM.

31.     During the engagement, WGM billed Credit Suisse for time expended by attorneys based on hourly rates ranging from $415.00 to $790.00 per hour. Allowance of compensation in the amount requested would result in a blended hourly billing rate for attorneys of approximately $508 (based on 395 recorded hours for attorneys at WGM's regular billing rates in effect at the time of the performance of

services).  As noted, annexed hereto as Exhibit "E" is a schedule listing each WGM professional and paraprofessional who performed services in these cases prior to and during the Compensation Period, the hourly rate charged by WGM for services performed by each such individual, and the aggregate number of hours and charges by each such individual.

       32.     WGM minimized fees by monitoring a small core team to render the bulk of all services requested.

## ACTUAL AND NECESSARY DISBURSEMENTS

       33.     As set forth in Exhibit "D" hereto, Credit Suisse has disbursed $7,706.79 as expenses incurred in providing professional services during the Compensation Period.  In addition, as set forth above and in Exhibits "E" and "F" hereto and in accordance with the terms of the Engagement Letter and Final Retention Order, Credit Suisse seeks reimbursement for professional fees and expenses incurred by WGM in the aggregate amount of $208,829.79, which amount is comprised of fees and expenses incurred during the Compensation Period in the amount of $173,789.03 ($168,942.00 in fees and $4,847.03 in expenses) and fees and expenses incurred prior to the Compensation Period in the amount of $35,040.76 ($35,024.50 in fees and $16.26 in expenses).  Accordingly, Credit Suisse seeks reimbursement of expenses in the aggregate amount of $216,536.58.

       34.     With respect to photocopying expenses, WGM charges its clients $.20 per page except when limited by a court to $.10 per page.  With respect to facsimile expenses, in compliance with the Guidelines, WGM does not charge for facsimile transmissions, other than the cost of long distance facsimiles at applicable toll charge

rates, which invariably are less than $1.25 per page as permitted by the Guidelines. Each of these categories of expenses does not exceed the maximum rate set by the Guidelines.

35. These charges, which are consistent with the Guidelines, are intended to cover Credit Suisse's and WGM's direct costs, which costs are not incorporated into Credit Suisse's monthly fees or WGM's hourly billing rates. Credit Suisse, on behalf of itself and WGM, is seeking reimbursement for expenses incurred exclusively on behalf of the Debtors in connection with the Debtors' cases.

36. Due to the nature of the Debtors' businesses, the location of their offices and facilities, as well as the location of members of the Debtors and their professionals, telephone calls and some travel have been required. On several occasions, overnight delivery of documents and other materials was required as a result of urgent needs necessitating the use of such express services.

37. The time constraints imposed by the circumstances of these cases have required Credit Suisse, and WGM on its behalf, to devote time during the evening and on weekends to the performance of professional services on behalf of the Debtors. These extraordinary services were only performed when essential in order to meet deadlines and react in a timely manner to the Debtors' needs for high-quality financial services. Neither Credit Suisse nor WGM charge for any overtime expenses, but, in accordance with the provisions of the Guidelines, Credit Suisse, on behalf of itself and WGM, seeks reimbursement for expenses related to working meals and transportation consistent with the provisions of the Guidelines.

38. Credit Suisse respectfully submits that the actual expenses incurred by Credit Suisse and WGM in providing professional services for which reimbursement

is sought in this Application were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors.

<u>**THE REQUESTED COMPENSATION SHOULD BE ALLOWED**</u>

39.     Section 328(a) provides that a court may authorize the employment of a professional person on any reasonable terms and conditions, including a retainer, hourly basis, or contingent fee basis.  Credit Suisse was employed on the basis of the terms set forth in the Engagement Letter and described above.  No developments have occurred since the approval of Credit Suisse's retention to prove that such engagement was improvident or not capable of being anticipated at the time the Engagement Letter was approved.

40.     Credit Suisse submits that it has satisfied the requirements of section 328(a) of the Bankruptcy Code.  The services for which it seeks compensation in this Application were necessary for and beneficial to the Debtors.  The compensation sought by Credit Suisse is consistent with the Engagement Letter and fair and reasonable.

41.     Section 330 of the Bankruptcy Code[3] provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services rendered … and reimbursement for actual,

---

[3] The Final Retention Order provides that "Credit Suisse shall be compensated and reimbursed in accordance with the terms of the Engagement Letter, pursuant to the standard of review under section 328(a) of the Bankruptcy Code and shall not be subject to review for reasonableness under section 330 of the Bankruptcy Code.  [H]owever, the U.S. Trustee] retains all rights to object to Credit Suisse's interim and final fee applications (including expense reimbursements) in respect of fees and expenses accruing during Credit Suisse's engagement pursuant to this Order, on all grounds, including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code."  Final Retention Order ¶¶ 3, 4.

necessary expenses." 11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for

the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;[4]
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field; and
>
> (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.* § 330(a)(3).

42.    In the instant cases, for the reasons previously discussed herein,

Credit Suisse respectfully submits that the professional services for which it seeks

compensation, and the expenditures for which it seeks reimbursement in this Application

---

[4] The Final Retention Order provides that Credit Suisse's attorneys' fees will be subject to the approval of this Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.  See Final Retention Order ¶6.

were necessary for and beneficial to Credit Suisse and its provision of financial advisory services to the Debtors.

## NOTICE

43.     Notice of this Application has been provided by overnight mail or hand delivery to: (i) the U.S. Trustee; (ii) counsel for the agent under the Debtors' prepetition credit facility; (iii) counsel for the agent under the Debtors' postpetition credit facility; (iv) counsel for the Creditors' Committee; (v) counsel for the Equity Committee; (vi) the Pension Benefit Guaranty Corporation; and (vii) all parties who specifically requested service in these cases.  In light of the nature of the relief requested, Credit Suisse submits that no other or further notice is necessary.

## CONCLUSION

WHEREFORE Credit Suisse respectfully requests that the Court enter an order (i) allowing compensation and awarding, on a final basis, the fees for professional services rendered by Credit Suisse during the Compensation Period in the amount of $1,450,000.00; (ii) allowing reimbursement for and awarding, on a final basis, the actual and necessary expenses incurred by Credit Suisse in the aggregate amount of $216,536.58, which amount includes (a) actual and necessary expenses incurred by Credit Suisse during the Compensation Period in the amount of $7,706.79; (b) professional services rendered prior to the Petition Date by WGM, on Credit Suisse's behalf, in the amount of $35,024.50; (c) professional services rendered during the Compensation Period by WGM, on Credit Suisse's behalf, in the amount of $168,942.00; (d) actual and necessary expenses incurred by WGM, on Credit Suisse's behalf, prior to the Petition Date, in the amount of $16.26; (e) actual and necessary expenses incurred by

WGM, on Credit Suisse's behalf, during the Compensation Period, in the amount of $4,847.03; (iii) authorizing the Debtors to reimburse Credit Suisse for the fees and expenses incurred by WGM prior to the Petition Date and during the Compensation Period in accordance with the terms of the Engagement Letter and Final Retention Order; (iv) allowing such compensation and reimbursement without prejudice to Credit Suisse's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of this Application; and (v) granting such other and further relief as is just and appropriate.

Dated:  October 6, 2006
      New York, New York

CREDIT SUISSE SECURITIES (USA) LLC

By:    /s/ Syed Ali Raza Mehdi
       Syed Ali Raza Mehdi
       Director
       Eleven Madison Avenue
       New York, New York 10010

CREDIT SUISSE SECURITIES (USA) LLC
Eleven Madison Avenue
New York, New York  10010
Telephone:  (212) 325-2000
Facsimile:  (212) 325-6665
Philippe Jacob, Managing Director
Syed Ali Raza Mehdi, Director

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
:
:
:
**In re:**                         :        **Chapter 11**

**ONEIDA LTD., et al.,**         :        **Case No. 06 – 10489 (ALG)**

              **Debtors.**     :        **(Jointly Administered)**
:
:
:
-----------------------------------------------------------------x

**CERTIFICATION PURSUANT TO GUIDELINES FOR FEES AND**
**DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF FIRST**
**AND FINAL APPLICATION OF CREDIT SUISSE SECURITIES (USA) LLC**
**FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES**

      I, Syed Ali Raza Mehdi, hereby certify that:

      1.       I am a Director in the firm of Credit Suisse Securities (USA) LLC,

formerly known as Credit Suisse First Boston LLC ("Credit Suisse") and the professional

designated by Credit Suisse with the responsibility for the chapter 11 cases of Oneida

Ltd. and certain of its direct and indirect domestic subsidiaries, as debtors and debtors in

possession in the above-captioned cases (collectively, the "Debtors"), in respect of

compliance with the Amended Guidelines for Fees and Disbursements for Professionals

in Southern District of New York Bankruptcy Cases adopted by the Court on April 19,

1995 (the "Local Guidelines") and the United States Trustee Guidelines for Reviewing

Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines," and together with the Local Guidelines, the "Guidelines").

2.    In accordance with the Guidelines, this certification is made in respect of Credit Suisse's first and final application, dated October 6, 2006 (the "Application") including the exhibits annexed thereto, seeking final allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses for the period commencing March 19, 2006 through and including August 29, 2006, in accordance with the Guidelines.

3.    In respect of Section B.1 of the Local Guidelines, I certify that:

(a)    I have read the Application;

(b)    To the best of my knowledge, information, and belief formed after reasonable inquiry, except as specifically disclosed in the Application, the fees and disbursements sought fall within the Local Guidelines; and

(c)    The fees and disbursements sought are charged in accordance with the practices customarily employed by Credit Suisse and generally accepted by Credit Suisse's clients.

4.     In respect of Section B.3 of the Local Guidelines, I certify that the Debtors, the attorneys for the official committee of unsecured creditors, the attorneys for the official committee of equity security holders appointed in these chapter 11 cases, and the United States Trustee for the Southern District of New York are each being provided with a copy of this Application.

Dated:  October 6, 2006
        New York, New York

                                    CREDIT SUISSE SECURITIES (USA) LLC

                                    By:    /s/ Syed Ali Raza Mehdi
                                           Syed Ali Raza Mehdi
                                           Director
                                           Eleven Madison Avenue
                                           New York, New York 10010

## Exhibit B

## Credit Suisse Professionals

| Professional | Position | Hours (During the Compensation Period) |
|---|---|---|
| Philippe Jacob | Managing Director | 105.0 |
| Syed Ali Raza Mehdi | Director | 219.0 |
| Gilles Guillon | Associate | 205.5 |
| Tim Frazier | Associate | 256.0 |
| **Total** | | **785.5** |

## Exhibit C

## Fee Calculation

| | |
|---|---|
| Monthly Fee: March 16 - April 15, 2006 | $150,000.00 |
| Monthly Fee: April 16 - May 15, 2006 | $150,000.00 |
| Monthly Fee: May 16 - June 15, 2006 | $150,000.00 |
| Monthly Fee: June 16 - July 15, 2006 | $150,000.00 |
| Monthly Fee: July 16 - August 15, 2006 | $150,000.00 |
| Monthly Fee: August 16 - September 15, 2006 | $150,000.00 |
| Subtotal: Monthly Fees | $900,000.00 |
| | |
| Final Payment | $1,000,000.00 |
| Less 50% of Monthly Fees | $450,000.00 |
| Adjusted Final Payment | $550,000.00 |
| | |
| **Total Fees Requested During Compensation Period** (Sum of Adjusted Final Payment and Monthly Fees) | **$1,450,000.00** |

**Exhibit D**

**Summary of Credit Suisse Disbursements**

| Expense Category | Amount ($) |
|---|---|
| Telecommunication | $720.21 |
| Business and Overtime Meals | $1,218.51 |
| Transportation | $2,012.09 |
| Printing and Copying | $773.32 |
| Database Access and Research | $2,954.06 |
| Courier Charges | $28.60 |
| **Total** | **$7,706.79** |

# Exhibit E

## Professional Services Rendered By Weil, Gotshal & Manges LLP

| Name of Professional | Department and Year Admitted* | Hourly Billing Rate ($) | Total Hours Billed | Total Compensation ($) |
|---|---|---|---|---|
| **Partners & Counsel** | | | | |
| Simeon Gold | Corp - 1973 | 790.00 | 3.20 | $    2,528.00 |
| Michael K. Kam | Tax – 1981 | 750.00 | 0.80 | $       600.00 |
| Penny P. Reid | L - 1989 | 715.00 | 19.20 | $  13,728.00 |
| Paul M. Basta | BFR - 1993 | 715.00 | 79.70 | $  56,985.50 |
| Theodore E. Tsekerides | L - 1993 | 575.00 | 23.10 | $  13,282.50 |
| *Total Partners & Counsel* | | | 126 | $87,124.00 |
| **Associates** | | | | |
| Tal S. Sapeika | BFR – 2002 | 440.00 | 74.40 | $  32,736.00 |
| Michael B. Chaisanguanthum | BFR – 2003 | 415.00 | 0.80 | $       332.00 |
| Sara C. Temes | BFR – 2003 | 415.00 | 193.80 | $  80,427.00 |
| *Total Associates* | | | 269 | $113,495.00 |
| **Paraprofessionals** | | | | |
| Alan Bazzari | BFR | 130.00 | 3.1 | $  403.00 |
| Lisa Mathai-Davis | BFR | 130.00 | 11.90 | $1,547.00 |
| Joshua I. Page | L | 155.00 | 3.80 | $  589.00 |
| Heather L. Aaronson | BFR | 165.00 | 1.20 | $  198.00 |
| Kathleen Lee | BFR | 200.00 | 0.90 | $  180.00 |
| Donald Etienne | BFR | 105.00 | 4.10 | $  430.50 |
| *Total Paraprofessionals* | | | 25 | $3,347.50 |
| **Total** | | | **420.00** | **$203,966.50** |

BFR-Business Finance & Restructuring; Corp – Corporate; L-Litigation.  * Year Admitted not applicable for Paraprofessionals.

## Exhibit F

## Summary of WGM Disbursements

| Expense Category | Amount ($) |
|---|---|
| Air Courier/Postage/Messenger | $169.67 |
| Computerized Legal Research | $498.20 |
| Conference Charges | $20.73 |
| Duplicating/Outside Printing | $4,009.01 |
| Transportation Expenses | $62.00 |
| Attorney Meals | $103.68 |
| **Total** | **$4,863.29** |